Wright, J.
The plaintiffs could only maintain the action by showing that they were the owners of the cloths, and entitled to the possession of them, and that they were tortiously taken and detained by the defendant.
1. As to their title: Between February and June, 1853, the plaintiffs furnished to Smith Brothers, calico printers, near Philadelphia, some 6,000 or 7,000 pieces of cloths, for printing, under an agreement of the following nature: The plaintiffs were to buy the cloths, and Smith Brothers to print them; after being printed, and returned to the plaintiffs, they were to advance one cent per yard on one style of the goods, and one and one-half cents per yard on another style, to Smith Brothers; and, when they were sold, and the cost of the cloths and the plaintiffs’ commissions for selling were deducted from the proceeds of the sales, any balance remaining was to be paid over to Smith Brothers. Of the cloths furnished by the plaintiffs, and printed under this arrangement, 2,096 pieces were sent, in October, 1853, to Hoyt, Tillinghast & Co., of Hew York, to sell on commission, the latter firm agreeing to make an advance on them, of seven and a half cents per yard, and which advance was made, to the amount of $2,900; of which the plaintiffs received $2,100, and Smith Brothers the sum of $800. It was to recover the possession of these printed cloths, consigned for sale to Hoyt, Tillinghast & Co., that this action was brought.
The cloths were originally the property of the plaintiffs; and I think they did not part with the title to them under the agreement with Smith Brothers, under which they were printed. There is nothing in that agreement to indicate a sale of the goods, or to create any title to them, when printed, in Smith Brothers. It created, at most, only a bailment; *350 Smith. Brothers being bound to return the identical goods they received. Be turning others, would not have been a compliance with the agreement. The goods remained the property of the plaintiffs, and. they were only bound to account to Smith Brothers for the printing; the amount of which was to be arrived at in the mode pointed out by the agreement. (Malloy v. Welles, 4 Comst., 85 ; Hurd v. West, 7 Cow, 752; Foster v. Pettibone, 3 Seld., 433; Barker v. Roberts, 8 Greenl., 101; Hyde v. Cookson, 21 Barb., 92.) The only case that would seem to be opposed to this construction of the agreement is that of Jenkins v. Eichelenbergher (4 Watts, 121). But that case differs from the present, in some' material respects; and cannot be sustained upon the principles held by our own courts, in the cases cited. The title to the cloths consigned to Hoyt, Tillinghast & Co., to sell, and which were in their possession after October, 1853, must be deemed to have been in the plaintiffs.
It was not enough, however, that they held the title to enable them to maintain the action; though the judge trying the cause appears to have acted on this assumption. But two questions were submitted to the jury (the judge, although requested, refusing to submit any others), viz.: whether the 2,096 pieces of goods consigned to- Hoyt, Tillinghast & Co., were printed on cloths which had been furnished by the plaintiffs to Smith Brothers, and the value of the goods so consigned to Hoyt, Tillinghast & Co.; and the jury were directed (should they find the.first question submitted to them in the affimative), to render a verdict for the plaintiffs, for the value of the goods remaining unsold at the time of the service of the attachments, deducting advances, expenses and charges up to the time of sale. This was, in effect, withdrawing the question from the jury, and holding, as a matter of law, upon the evidence, that the plaintiffs were entitled to the possession of the goods when the action was brought, and that the defendant, in what-he did, was a trespasser and liable to .an action by them.
This, I think, was error. This plaintiffs, though having a general property in the goods, could not recover unless entitled *351 to the possession when they commenced their action. The cloths were in the hands of Hoyt, Tillinghast & Co., the factors of the plaintiffs and Smith Brothers, to make sale of them, for the purpose of reimbursing the plaintiffs for the cost of the cloths,, and Smith Brothers for the printing. This was in pursuance of an arrangement made by the agent of the parties, and by which arrangement Hoyt, Tillinghast & Co. were to make an advance of seven and a half cents per yard on the cloths. The factors advanced $2,900 in the early part of October, 1853, $2,100 of which went to the plaintiffs, and $800 to Smith Brothers. This action was commenced in May, 1854, at which time sales had been made by Hoyt, Tillinghast & Co., to the amount of $1,968, subject to a deduction for expenses, charges and commissions. Hoyt, Tillinghast & Co. were in the possession of the goods when the plaintiffs brought their action, and were entitled to hold them for their advances. The plaintiffs were not entitled to the possession. I cannot see, therefore, how they were in a position to maintain the action. They could not have maintained trespass, for the sheriff did not interfere with their possession, nor could they have maintained trover, not having the possession, or the present right of possession. To warrant trover, the plaintiffs should have had a present right of possession in the chattels. The possession of the cloths was in Hoyt, Tillinghast & Co., and they having a lien upon them for advances, the right of possession was in them. (Bush v. Lyon, 9 Cow., 52.) But in order to maintain replevin, the plaintiff must show a right to have delivery of the property at the time of the commencement of the suit. The proceeding is partly in rem, and, unlike trespass or trover, which seeks damages only. (Wheeler v. Train, 3 Pick., 258; Sharp v. Whittenhall, 3 Hill, 576.) The provisional remedy, under the Code, for the claim and delivery of personal property, and which was intended as a substitute for the provisional relief theretofore obtained in the action of replevin, provides that the plaintiff, in an action to recover the possession of personal property, may claim the immediate delivery of it. (Code, §§ 206-208.) In this case, *352 the plaintiffs could not have had an immediate delivery of the property; and instead of showing a right to have delivery at the commencement of the suit, they showed affirmatively that they had .not.
Again, conceding the title to the prints to have been in the plaintiffs, and they had the right to have delivery of them at the commencement of the suit, the defendant was not shown to have done anything for which he was liable to an action by any person. Two warrants of attachment against Smith Brothers, as non-residents, were delivered to him, as sheriff, to be executed. One of his deputies went to the store of Hoyt, Tillinghast & Co., and served on the latter a certified copy of the attachment, with a notice indorsed on it, requiring them to furnish him with a certificate of the property held by them belonging to Smith Brothers. The prints were then in Hoyt & Co.’s store, mixed up with other goods, and the deputy-sheriff did not see or touch them. Hoyt & Co., knowing no others interested in the goods than Smith Brothers, furnished the deputy with a statement of the amount of prints received on sale, the amount which they had advanced on the goods, and the amount and parcels which had been sold; the deputy saying that he did not want the property, but only the certificate. He wanted to attach the interest of Smith Brothers. Nothing more was done. The defendant never had the property in his possession or under his control. Neither he nor his deputies ever saw it. Hoyt, Tillinghast & Co., the plaintiffs’ agents, continued in unmolested possession, and made sales of the goods. They had sold to the amount of $631.56, when the deputy-sheriff served a copy of the attachment; they sold to the further amount of $1,337.37, before this action was commenced, and the remainder of.the entire consignment, afterwards and before the end of the year; and at the time of the trial, which occurred in May, 1855, they admitted that they had a balance of money in their hands, due to the account of Smith Brothers, after deducting expenses, charges and commissions, of $1,856.76.
*353 There was no tortious act done by the defendant. He did not take into his possession or under his control the property in question, in defiance or exclusion of the owner. The notice given-by him indicated that he did not intend to interfere with the possession of the goods. It was the notice prescribed by section 235 of the Code, in cases where the right, interest or property, is incapable of manual delivery. What he did would clearly not have rendered him liable to an action, at the suit of Hoyt, Tillinghast & Co., to recover the possession of the property. In fact, the act of the defendant did not amount to an attachment of the property. It was not a case where an attachment could be executed by leaving with the individual holding the property a certified copy of the warrant of attachment, with a notice showing the property levied on. (Code, § 235.) The property was not incapable of manual delivery; and no notice was ever left with Hoyt, Tillinghast & Co. showing the property levied on. After obtaining, the certificate under section 236 of the Code, from Hoyt, Tillinghast & Co., nothing further appears to have ever been done that looked like intermeddling with the goods. This case is not at all like that of Wintringham v. Lefoy (7 Cow., 735). There the officer levied his execution, took the property into his possession, though there was no manual seizing of it, and was about to take it away, and would have done so but for the security given him that it should be forthcoming on the execution. Here was clearly a tortious intermeddling with the goods of another. But in the present case, as the defendant neither took possession of the goods, nor did any act subjecting the goods to his control, nor undertook to control them in defiance and exclusion of the owner, he was not liable to an action as a trespasser. It was said in the court below that the effect of the attachment was to disaffirm the title of the plaintiffs, and was, in legal effect,' an assumption of control over the goods as the property of Smith Brothers, notwithstanding the sheriff did not take actual possession of the goods. But if this was so, and the defendant did nothing in respect to the property but serve the attachment on Hoyt, Tillinghast & Co., and *354 assume to levy it on the interest of Smith Brothers, he would not be a trespasser. The proposition, however, is not sound. As well might it be said that a creditor, by a sale under execution against a mortgagor, disaffirmed the title of a mortgagee under a mortgage in which the right of possession was in the mortgagor. It must have been on some notion of this kind that the judge at the trial refused in the first place to nonsuit the plaintiffs, and afterwards refused to charge that if the defendant did not take into his possession or under his control the property sued for, or did not, at the commencement of the action, detain from the plaintiffs the property sued for, having the same in his possession- or under his control, they could not recover; and charged, as matter of law, that if the title to the goods was in the plaintiffs, the defendant was liable to respond to them for their value.
This case presents singular features. A party not in possession of goods or having a present right of possession, but the possession being in his bailor to. make sale with an undischarged lien on them for advances, brings his action against a third person who has neither disturbed the possession of the ' bailor, nor in any way subjected the goods to his control, nor done anything but serve a copy of a warrant of attachment on such agent, to recover the possession of such goods. Instead-of submitting the questions of fact to the jury under proper instructions as to the law, the judge substantially instructs the jury that, if they found one fact, viz.: that the goods consigned to the agent for sale were printed on cloths furnished by the plaintiffs to the printers, they should find a verdict for the value of the goods remaining unsold at the 'time of the service of the attachments, less advances, expenses and charges of the agent up to the time of sale. Under this instruction, the jury found a general verdict for the plaintiffs, and assessed the value of the property at $5,619.37, being the value as found by them, without any deduction for advances, expenses or commissions. The case is ordered in the first instance to be heard at general term on ■ exceptions. The general term overruled the exceptions, and *355 gave judgment for the plaintiffs, not for the amount of the verdict as found by the jury, but for that amount deducting the advances, charges and expenses of Hoyt, Tillinghast & Co., and, without any authority to do so, ordered a reference to report the amount of such deductions. The property had been sold under the original consignment without any interference on the part of the plaintiffs or defendant with the consignees’ rights; and the court, finding it impossible under the evidence to award a return of -the property, gave judgment for its value,' less the amount of Hoyt, Tillinghast & Co.’s advances, charges and expenses. Yet the only judgment authorized was the alternative one prescribed by section 277 of the Code, viz.: a return of the property, or the valué thereof, in case return could not be had.
The judgment of the Superior Court should be reversed, and a new trial ordered.
Sutherland, J.
I am of the opinion that the complaint in this case should have been dismissed, upon the ground that there was no evidence that the defendant had ever seized or' had possession or control of the goods, for the possession of which the action was brought.
The evidence of Mr. Knight, one of the firm óf Hoyt, Tillinghast & Co., and of Mr. Bensel, the deputy sheriff, who had charge of the service of the attachments, is clear and explicit, that the deputy did not see or take possession of any of the goods.
It is plain, I think, from the undisputed facts as to the manner of the service of the attachments, that the deputy-sheriff did not intend to levy on or seize the goods, but only to attach Smith Brothers’ interest in the goods, or proceeds of the goods, whatever it might be, as property incapable of manual delivery, under section 235 of the Code.
The service was made by leaving with Hoyt, Tillinghast & Co., certified copies of the attachments, with a notice indorsed upon both, to the effect that all the property and effects, rights and shares of stock, with interest thereon and dividends there *356 from, and the debts and credits of Smith' Brothers, then in the possession, or under the control, or which might thereafter come into the possession or under the control, of Hoyt, Tilling-hast & Co., would be liable to such attachment, and requiring a delivery of all such property, &c., with a certificate thereof.
Mr. Knight testified, that when the first attachment was served, he told the deputy that they (Hoyt, Tillinghast & Co.), had advanced on the goods, and must hold them; that the deputy said he required a statement of the amount they had advanced on the goods, and the amount and parcels which had been sold, and that he gave him the certificate, which was introduced in evidence.
Bensel, the deputy, testified, that he gave no directions about the goods, only as to the form and the manner of giving the certificate; that he did not say anything about their disposing of the property; that when he served the second attachment, they told him they had not made any further sales.
In my opinion, there was no evidence to show any levy on or seizure of the goods, or interference with Hoyt, Tillinghast & Co.’s possession of the same, that would have authorized them to have brought either trespass or replevin.
The defendant had no right to seize and take into his possession the goods under the attachments. Hoyt, Tillinghast & Co. had a right, by the arrangement or contract under which the goods- came into their hands, and they had made their advances, and to which the plaintiffs were parties, to the possession of the goods, and to retain the possession of the goods and to sell them, for the purpose of reimbursing their advances and getting their commissions. (Brownell v. Carnley, 3 Duer, 9, and cases there cited; Holbrook and others v. Wright, 24 Wend., 148; Gihon v. Stanton, 5 Seld., 476.)
The case of Steif v. Hart (4 Comst., 20), appears to have been a technical decision upon the statute relating to executions only. In that case, the Supreme Court decided ■ that the statute, in authorizing a sale under execution of the interest of the pledgor, authorized the sheriff to remove the property *357 from the possession of the pledgee. This decision was affirmed in the Court of Appeals, solely in consequence of an equal division in the opinions of the members of that court. The statute, by its express words, is confined to sales under executions. In Brownell v. Carnly, above cited, the Superior Court of Hew York held, Oakley, Ch. J., delivering the opinion, that if the decision of the Court of Appeals, in Steif v. Hart, was to be respected and followed, the statute ought not to" be extended, by construction, to attachments. The reasons for so holding, as stated by Chief Justice Oakley in his opinion, seem to me satisfactory.
How, it is not to be presumed, that Bensel, the deputy, in Serving the attachments, did, or intended to do, what he had no no right to do. He probably had a right, under sec. 235 of the Code, to attach Smith Brothers’ interest in the proceeds of the goods, after the payment of Hoyt, Tillinghast & Co.’s advances, charges and commissions; and it is plain, I think, that it waa this interest that he intended to attach; but on the question whether he did seize or levy on, or take possession of the goods, so that either the plaintiffs, or Hoyt, Tillinghast & Co., could maintain an action for their possession, it is immaterial whether he had a right to attach the interest of. Smith Brothers’ in the proceeds, after payment of the advances, &c., or whether, if he had the right to attach such interest, the attachment was properly served for that purpose. Again, conceding that Hoyt, Tillinghast & Co. might have maintained trespass or replevin, the plaintiffs could not, because they had neither the possession nor the right of possession. (Putnam v. Wiley, 8 Johns., 432; Sharp v. Whittenhall, 3 Hill, 576.)
If the plaintiffs can maintain this action, they might have claimed an immediate delivery of the goods (Code, §§ 206, 207, 208); but the plaintiffs had no right to-the possession of the goods without paying, or offering to pay, to Hoyt, Tillinghast & Co., their advances charged and commissions. (See cases first above cited.)
Even conceding that the plaintiffs were the owners and consignors of the goods, and that they could, in a proper form of *358 action, have recovered nominal damages against the sheriff for his. proceedings under the attachments, yet in no action or form of action, on the conceded facts of this case, would they have been entitled to recover against the sheriff the valué of the goods, or of the goods remaining unsold at the time of the service of the attachments, deducting advances, &c.
The goods were in the hands of Hoyt, Tillinghast & Co., as the plaintiffs’ consignees; they were not removed by the sheriff, but were left in their hands, and sold by them under the original consignment without any interference on the part of the plaintiffs or the sheriff. With the proceeds of the sale in the hands of their own consignees or agents, from aught that appears, ready to be paid over after deducting advances, &c., according to the arrangement under which the goods came into the hands of such consignees or agents, would the plaintiffs be entitled to recover of the sheriff the value of the goods, or of the goods remaining unsold at the time of the service of the attachments, deducting advances, &c. ? If so, and such a recovery was permitted, what would be done with proceeds of the sale in the hands of the consignees after deducting advances, &c. ? The plaintiffs certainly, conceding their ownership of the goods, would not be entitled to it, after having recovered of the sheriff the value of the goods.
The goods of A B, in the hands of his agent for sale, are levied on by the sheriff as the goods of 0 D, but not removed. The agent afterwards sells the goods. Can A B sue the sheriff and recover the value of the goods, with the proceeds of the sale in the hands of his agent ? It appears to me that he cannot, unless he could do so with the proceeds of the sale in his own pocket.
I am of the opinion, then, that the direction given by the court to the jury "in this case, if they found the first question. submitted to them in the affirmative, then the plaintiffs were entitled to a verdict for the value of the goods remaining . unsold, deducting advances, expenses and charges up to time of sale, was erroneous, irrespective of the form or nature of the action.
*359 And considering that the action was to recover the possession of the goods, the direction was erroneous. It should have been, if they found in the affirmative on the first question submitted to them, to find a verdict for the. plaintiffs for the goods remaining unsold, and assess their value and the damages for the detention. (Code, § 277.) It appears to me, that the direction to the jury ignored the form of the action, and so, indeed, did the whole trial and the judgment. I think, also, that the verdict and judgment were both irregular.
The jury found a verdict for the plaintiffs, and assessed the value of the property at $5,619.37. They accompanied this verdict with a statement, which must be taken as part of the verdict, showing that the $5,619.37 was the aggregate value of all the goods sent to Hoyt, Tillinghast & Co., at different times and in different parcels, less the amount of sales up to the time of the attachment, and stating that this $5,619.37 was the amount due to the plaintiffs, from Hoyt, Tillinghast & Co., subject to their advances, commissions, guaranty, interest and expenses usual in such cases, without ascertaining, finding or stating, the amount of such advances, &c. If judgment on this verdict had not been suspended until the motion for a new trial at general term was heard, I do not see how any judgment could have been entered on it. The alternative judgment prescribed by the Code, (§ 277,) could not have been entered, for it is plain from the statement that the jury did not intend to find a verdict for the plaintiffs for the value of the goods, or of the goods remaining unsold, without deducting advances, &c., or that in case the goods or the unsold goods could not be delivered to the plaintiffs, they should have execution for their assessed value without deducting advances, &c.; and a judgment merely for their found or appraised value, less the amount of such advances, &c., could not have been entered on the vérdict, for the jury did not find or state, in accordance with the direction of the court, the amount of such advances.
The general term, .after denying the motion for k new trial, undertook to correct or supply this omission of the jury .to *360 find the amount of the advances, &c., by ordering a reference to ascertain the same. This was, in fact, a trial of the action at general term. I suppose that the court, at general term, sitting as an appellate .court merely, could not try the action, or make the order of reference. Section 270 of the Code was not intended to confer on the court at general term the power to direct such a reference. Considering the nature of the action, I do not see how such ah order of reference could have been made at the trial, or at special term, without the consent of the parties.
The judgment which was entered on the verdict of the jury and the report of the referee, not being in' the alternative for the possession of the goods, or for their value, if a delivery could not be had, but for the amount of the verdict, deducting the amount of the advances, &o., as found by the referee, was also erroneous, in point of form. (Code, § 277; Fitzhugh v. Winan, 5 Seld., 559.) But this error in point of form might possibly be corrected, if the jury had found the amount of the advances, &c.
Upon the whole, conceding that the finding of the jury on the question of fact, whether the goods in question were printed on cloths furnished by the plaintiffs, was conclusive, and that the property or title of the goods in question was in the plaintiffs, in my opinion the judgment of the Superior Court should be reversed, on the grounds above stated.
It is not necessary, thérefore, to examine or decide the question of title to the goods, as between the plaintiffs and Smith Brothers; nor the question of their respective rights in or to the proceeds of the sales of the goods, less the advances, &c.
As to the first question, the decision of it would mot, probably, be of any practical use to the parties; for it is not to be supposed that the plaintiffs could, on a second trial, by other or further proofs, show a right to maintain this action for the possession of the goods, conceding the general property in the goods to have been in them, at the time of the commencement of the action. As to the second question, there can be no amendment of the pleadings in this action to put the *361 title to the proceeds of the sales of the goods, less advances, &c., in issue. I would observe, however, that I do not think there would be much difficulty, on the facts presented in this case, in determining either question.
The judgment of the Superior Court should be reversed, with costs.
Denlo, Ch. J., and Selden, J., took no part in the decision.
Judgment reversed, and new trial ordered