## HYDE & EVERIT vs. COOKSON and others.

By a written agreement, between H. & E. of the one part and O. of the other part, O. agreed to tan a quantity of hides to be furnished by H. & E. on a commission of five per cent on cost and charges for buying, and six per cent commission for selling the leather.   O. was to take the hides in New York and transport them to his tannery in Tioga county, and to tan and manufacture them into hemlock sole leather, and return the same to H. & E. in New York, who were to sell the same at their discretion.   The hides were to be insured, and insurance charged to O. by H. & E.   When the leather should be sold, the account was to be made up, and the net proceeds of sales, after deducting cost of hides and expenses, commissions on hides and leather, interest, insurance and all other expenses, was to be the profit or loss to accrue to O. in full for tanning the hides.   Held that this was not a contract of sale, but of bailment, the right of property remaining unchanged; and that therefore H. & E. might maintain an action to recover damages for the conversion of the hides, against a person claiming the same under an assignment executed by O.

Held also, that the proper measure of damages in such action was the value of H. & E.'s interest in the hides, and not the enhanced value thereof when manufactured into leather.   The plaintiffs were therefore allowed to recover the money paid by them, and five per cent commissions for buying, expenses, interest, and six per cent commissions upon the value of the leather when ready for the market.

In acquiring title to property by accession, the law makes a distinction between a willful and an involuntary wrongdoer.   The former never can acquire the title, however great the change wrought in the original article may be; while the latter may.

Where a manufacturer has expended his money, and labor, in good faith, upon

Hyde *v.* Cookson.

property, in pursuance of a contract with the owner, he cannot be regarded as a wrongdoer, or deprived of the enhanced value which he has given to the property, in an action by the owner, sounding in damages.

APPEAL from a judgment entered at a special term, after a trial at the circuit. The action was brought to recover damages for the alleged conversion by the defendants of a quantity of hides.

The complaint set up a contract between the plaintiffs and one John H. Osborn, respecting the hides in question, (which the plaintiffs claimed was a contract of bailment;) that the hides were furnished to Osborn under the contract, and by him partly tanned, when he failed, and made an assignment of all his property to the defendants, for the benefit of his creditors. That the defendants took possession of the hides, under the assignment, claiming to own them, and refused to deliver them to the plaintiffs on demand. That the hides were of the value $13,133. The plaintiffs demanded judgment for $15,000 with interest from May 6th, 1854. The answer set forth the contract between the plaintiffs and Osborn, in *hæc verba*, (claiming it to be a contract of sale,) admitted the furnishing of the hides, under it, and their being partly tanned; Osborn's failure and assignment to them, and their claim of the hides under the assignment; and denied the value to be $13,133. For a second defense the answer averred that Osborn increased the value of the hides, in partly tanning them, $2000, and claimed this amount as a counter-claim. The reply denied that Osborn increased the value of the hides $2000, and alleged that after the defendants had taken possession of them under the assignment, the plaintiffs offered to pay the defendants all the expenses and charges of said Osborn chargeable to the hides, which the defendants refused to receive, and denied the plaintiffs' right to the hides; it also denied that the defendants were entitled to their counter-claim.

The plaintiffs' counsel, after opening the case to the court and jury, read in evidence a contract in the words and figures following, to wit:

"Agreement between Hyde & Everit of New York, and

John H. Osborn, of Newark, Tioga county, and state aforesaid, to tan from two to three thousand hides, to be worked in the present fall, and to be furnished by said Hyde & Everit on commission of 5 per cent on cost and charges for buying, and 6 per cent commission and guarantee for selling the leather. Said Osborn takes the hides in New York, transports them to his tannery in Tioga county, is to tan and manufacture them into hemlock sole leather, in a reasonable time and in a good and workmanlike manner, and return the same to Hyde & Everit in New York, who are to sell the same at their discretion, said hides to be insured and charged to said Osborn by Hyde & Everit. When the leather is sold, the account is to be made up and the net proceeds of sales, after deducting cost of hides and expenses, commissions on hides and leather, interest, insurance and all other expenses, shall be the profit or loss to accrue to Mr. Osborn in full for tanning as above.

New York, Oct. 6, 1853.          ·          HYDE & EVERIT;

Witness, Wm. H. Cotton.          JOHN H. OSBORN."

The plaintiffs proved the value of the hides, and the amount of interest which had accrued; also the payment of $60 by them, as the premium upon an insurance of the hides. Upon the plaintiffs resting their cause, the defendants' counsel moved the court that the plaintiffs be nonsuited, on the ground that the contract between the plaintiffs and John H. Osborn, read in evidence by the plaintiffs' counsel, was a contract of sale, and the hides in question having been furnished by the plaintiffs to said Osborn, under said contract, vested in said Osborn and became his property. The court denied the motion, and the defendants excepted. It was hereupon agreed between the parties, and admitted, for the purposes of this action, that the hides had been at the time of the commencement of this action, increased in value by reason of the expenditures and labor of Osborn in part performance of said contract, to the amount of $2000. Whereupon, the defendants offering no further evidence in the case, the court charged the jury that the plaintiffs were entitled, under the pleadings and the contract read in evidence as above, to recover the value of the hides in controversy, with interest, which value, if they believed

the evidence, including interest, amounted to the sum of $9443 67 cents. To which charging of the court the defendants excepted. And the court further charged the jury, that the plaintiffs were entitled, in addition to the value of the hides as above stated, to recover the increased value thereof caused by the expenditures, labor and services of said Osborn in and about the tanning of the same, as agreed upon between the parties on this trial, with interest thereon from the time of the commencement of the action, which interest was agreed upon at $64.37, making the whole of said latter amount of $2064.37. To which charging the defendants excepted. The jury under said charge of the court returned their verdict in favor of the plaintiffs, for the sum of $11,508.04, besides costs. The defendants appealed.

*D. S. Dickinson* and *John M. Parker*, for the appellants. I. The court erred in refusing to nonsuit the plaintiffs. The contract, read in evidence by the plaintiffs, was a contract of sale, and the hides in question having been delivered to Osborn under it, the title thereto vested in him, and by the assignment of Osborn to the defendants, passed to them. We contend that the contract is to be held a contract of sale, because: 1. The hides were, by the contract, to be furnished by the plaintiffs to Osborn on commission of five per cent on cost and charges for buying. That is, the plaintiffs buy the hides for Osborn, and charge him a commission for buying. Webster gives the following definition of the word commission : " In commerce, the state of acting under authority in the purchase and sale of goods for another." " The allowance made to a factor or commission merchant for transacting business." The buying of them on commission for Osborn indicates that the property was to be his. This provision in the contract is not consistent with any other construction. 2. The plaintiffs were to sell the leather and have six per cent for selling and guaranteeing the sales. This shows why the leather was to be returned to the plaintiffs, not as their leather, but that they might have the commission for selling it, as well as to provide a security for the price of

the hides ; so that the provision that the same hides, after being tanned, were to be returned to the plaintiffs, does not, as in some of the cases, (3 *Seld.* 433 ; 4 *Coms.* 76, *and cases there cited,*) characterize it as a bailment. They are to be returned for a special purpose, inconsistent with the idea of the leather being the plaintiffs', to wit: to be sold by them on commission. That is, the plaintiffs were to be Osborn's factors in selling the leather. Again, the plaintiffs were to guarantee the sales ; or, in the language of the complaint, "the payment of the price" for which the leather should be sold. If the leather was the plaintiffs', what matter was it to Osborn, whether those to whom they sold it, paid them for it, or not? The guaranty is consistent with the leather being Osborn's—not with its being the plaintiffs'. The provisions in the contract for a sale of the leather by the plaintiffs on commission, and for a guaranty by them of the sales, give character to the transaction as a sale of the hides, and are consistent with no other construction. 3. The hides were to be charged to Osborn by the plaintiffs. This is another very distinct indication of a sale. Osborn thereupon became the debtor of the plaintiffs for the hides, and, consequently, the hides became Osborn's. 4. When the leather shall have been sold, the net proceeds, after deducting cost of hides and expenses, commissions on hides and leather, interest and insurance, are to be Osborn's profit or loss. Osborn is responsible for the hides and leather. He suffers the loss as well as reaps the profits. If the leather fails to bring as much as the cost of the hides, and expenses, &c. the loss falls on Osborn. He must, at all events, pay the plaintiffs all those items. Can it be that this is not a sale? Can the plaintiffs be the owners of the hides, and yet hold Osborn, absolutely, for the cost and five per cent commission for buying them for him ? The whole transaction is inconsistent with a bailment. It is true that the contract provides for tanning the hides ; the plaintiffs have an interest in having them tanned, that they may make another commission on the sale of the leather, so that it is not only a contract of sale, but a contract to tan also—the latter accessory to the former. It also speaks of the net proceeds, as

Hyde *v.* Cookson.

Osborn's profit or loss to accrue for tanning. This does not necessarily conflict with the idea of a sale. The manufacturer buys the raw material, converts it into a manufactured article, and sells it at an advance beyond the cost and expenses. This might well be called his profit for manufacturing. But even if this clause, taken alone, would indicate a mere bailment, it does not take away the character impressed on the transaction by its provisions; it is none the less a contract of sale. The construction must be upon the entire instrument, and not merely upon disjointed parts of it. The whole context is to be considered, (3 *Seld.* 437,) and that indicates a sale, with which this clause must be construed, as it can be, to agree. That this is a sale, the case of *Jenkins* v. *Eichleberger*, (4 *Watts' Rep.* 121,) which is entirely analogous, shows. In that case the supreme court of Pennsylvania held just such a contract, one of sale and not of bailment. (*See also* 4 *W. & S.* 179. 8 *id.* 241.) The same reasons of public policy which the court advert to in *Jenkins* v. *Eichleberger*, apply equally to this case.

II. The court erred in charging the jury that the plaintiffs were entitled to recover the value of the hides. 1. For the reasons above set forth. 2. Because, if the transaction was not a sale, then it was a partnership arrangement. 3. Because there was no conversion, and the action was prematurely brought.

III. The court erred in charging the jury that the plaintiffs were entitled, in addition to the value of the hides, to recover the increased value thereof, caused by the expenditures, labor and services of Osborn in and about the tanning of the same. The rule adopted by the court applies only where the property has been tortiously taken. (*Baker* v. *Wheeler*, 8 *Wend.* 505. *Brown* v. *Sax*, 7 *Cowen*, 95. And see 3 *Comst.* 379; *Betts* v. *Lee*, 5 *John.* 349; *Curtis* v. *Groat*, 6 *id.* 169.) This property was not tortiously taken by the defendants. (*Nash* v. *Mosher*, 19 *Wend.* 431. *Marshall* v. *Davis*, 1 *id.* 109.) The plaintiffs could not have maintained trespass for the hides, against the defendants. In other cases, if the plaintiff can be indemnified by a sum of money less than the full value, that sum is the measure of damages. (*Chamberlin* v. *Shaw*, 18 *Pick.*

278. *The Dresser Manuf. Co.* v. *Waterston,* 3 *Met.* 9. *Vickery* v. *Taft,* 2 *Chipm.* 241. *Spoor* v. *Holland,* 8 *Wend.* 445. 4 *Burr.* 2214. *Sedg. on Dam.* 510.) The case of *Pierce* v. *Schenck,* (3 *Hill,* 28,) which was relied upon on the trial, does not uphold the charge; for although Judge Cowen, in his opinion, seems to lay down the same doctrine, it will be found, in looking through the case, that Nelson, Ch. J., and Bronson, J., expressly deny that the question arose in the case, whether the plaintiff could recover the enhanced value of the property; and held, merely, that he was entitled to recover the value of the property before the defendant's labor was bestowed upon it.

IV. The court erred in permitting the policy of insurance upon the hides to be read in evidence. It was entirely irrelevant to the issues. It could not be relevant unless the contract provided that the plaintiffs should insure in their own name, as this insurance was. And this being a bill of exceptions, if improper evidence was admitted, it is such an error as entitles the defendants to a reversal of the judgment.

*Wm. Curtis Noyes,* for the plaintiffs. I. The contract under which John H. Osborn received the hides from the plaintiffs created a bailment, and not a sale. The distinction between a bailment and a sale is clear: "When the identical thing delivered, although in an altered form, is to be restored, the contract is one of bailment, *and the title to the property is not changed;* but when there is no obligation to restore the specific article, and the receiver is at liberty to restore another thing of equal value, he becomes a debtor to make the return, and the title to the property is changed; it is a sale." (*Mallory* v. *Willis,* 4 *Comst.* 85. *Foster* v. *Pettibone,* 3 *Selden,* 433.) (1.) Osborn agreed to "transport the hides to his tannery," there "*to tan*" them, and *work them* within the time specified. He was "to tan and *manufacture them into hemlock sole leather within a reasonable time and in a good and workmanlike manner.*" He "was to *return* the *same* in their improved condition to the plaintiffs in New York." The plaintiffs were not to pay Osborn for the leather, but he was to receive in a manner designated his

Hyde, v. Cookson.

payment "*for tanning*." Thus, every act to be done in relation to these hides until Osborn was paid for "tanning," was expressly provided for, treating them throughout as the property of the plaintiffs. (2.) There was no agreement on the part of the plaintiffs *to sell*, nor on Osborn's part *to buy* or *to pay* for the hides. No option was left to Osborn; he had no authority to sell or dispose of the hides or leather, but on the contrary, was prohibited from so doing. (3.) The contract could not be satisfied by the delivery of leather from any other hides. Osborn was bound to return these identical hides, after they were tanned into a specified kind of leather; his labor was to be employed upon the property of the plaintiffs with a view to its amelioration. (*Pierce* v. *Schenck*, 3 *Hill*, 28. *Wadsworth* v. *Alcott*, 2 *Selden*, 64, 71. *Hurd* v. *West*, 7 *Cowen*, 752. *Barker* v. *Roberts*, 8 *Greenl.* 101. *Johnson* v. *Miller*, 16 *Ohio R.* 431. *Story on Bailm.* §§ 439, 228, 283, 370, *a.* *Parsons on Cont.* 611, 618, *note.*)

II. The word "charged," as used in the contract, does not import that there was a sale of the hides. It is not a word having a definite legal signification, and here it imported only that the plaintiffs were to keep a memorandum of the number and value of the hides sent, as they were to do in relation to insurance, and other expenses, to enable the parties more easily to adjust their matters on a final accounting; or it must otherwise be limited to the insurance. To construe it as importing a sale, would contradict the letter and spirit of the other parts of the agreement. To arrive at the true construction of an agreement and ascertain the intention of the parties, the whole instrument must be examined, and its effect upon any proposed construction; and such a construction should be adopted as will carry that intention into effect, although a single clause might lead to a different conclusion. (*Foster* v. *Pettibone*, 3 *Seld.* 433. *Merritt* v. *Gore*, 29 *Maine R.* 346. *Hasbrook* v. *Paddock*, 1 *Barb.* 635. *Bellinger* v. *Kitts*, 6 *id.* 233.) The case of *Jenkins* v. *Eichleberger*, (4 *Watts*, 121,) which is relied upon by the defendants, was a controversy between an execution creditor and the merchant who delivered the hides; and the contract in that case

was, under the surrounding circumstances, looked upon by the court as a scheme to defraud creditors. The contract, however, although similar to the one in question in some of its terms, differed materially in others. The case is questioned in *McCullough* v. *Porter*, (4 *Watts & Serg.* 179,) and in *Lehigh Co.* v. *Field*, (8 *id.* 241,) and cannot be sustained upon the principles which our own courts have held as controlling upon the question whether a contract creates a bailment or a sale.

III. The defendants were not purchasers, nor execution creditors, but assignees, only succeeding to the title and rights of Osborn ; and the answer admits the conversion of the property.

IV. If this was a conditional sale, then no title vested in Osborn until the condition was complied with. (*Covell* v. *Hill*, 2 *Selden*, 374.)

V. The rule of damages adopted at the trial was correct, and the defendants were not entitled to their counter-claim. The measure of damages in trespass is the value at the time of the asportation, and in trover at the time of the conversion, as evidenced by the demand and refusal. The bailor and owner is entitled to recover the property in its improved form: (1.) In *Brown* v. *Sax*, (7 *Cowen*, 59,) trover was maintained for *boards*, which had been sawed from logs belonging to the plaintiff, and the *value* of the boards was declared to be the measure of damages. The principle of this case was reaffirmed in *Pierce* v. *Schenck*, (3 *Hill*, 28;) *Baker* v. *Wheeler*, (8 *Wend.* 505;) *Rightmyer* v. *Raymond*, (12 *id.* 51;) *Mallory* v. *Willis*, (4 *Comst.* 76 ;) *Martin* v. *Porter*, (5 *Mees. & Wels.* 350;) *Wild* v. *Hold*, (9 *id.* 672;) 3 *Comst.* 379. (2.) If the counter-claim proceeds upon the footing of the contract, Osborn was not entitled to it until he fulfilled on his part. He was only to have the proceeds for "*tanning*," after deducting certain charges. (3.) The plaintiffs tendered to the defendants a sum sufficient to cover the amount of the alleged counter-claim. The defendants refused to accept the tender, but claimed an absolute title to the property. These claims are inconsistent ; and when, by placing themselves upon the ground of an absolute title, they force the plaintiffs to sue to recover their rights, they must suf-

Hyde v. Cookson.

fer the consequences, and lose the benefit of the tender. ( *Winter* v. *Coit,* 3 *Selden,* 288.)

VI. The policy of insurance was competent for the purpose for which it was offered, and the exception was not well taken.

*By the Court,* BROWN, P. J. The answer admits that the hides in controversy were furnished by the plaintiffs and received by John H. Osborn, the defendants' assignor, to be tanned and manufactured into hemlock sole leather, under the contract of the 6th of October, 1853. There is one feature which distinguishes this contract from some of those of a similar kind which have been the subjects of litigation in the courts, and which goes far to repel the idea of a sale. It is this: that the identical hides, after being tanned, and manufactured into leather, were to be returned to the plaintiffs. It is marked by another feature having a like effect. Osborn did not undertake to pay for them. His responsibility was not that of a purchaser upon credit, but that of a bailee to manufacture. Had the property been lost or destroyed by any casualty whatever, not attributable to his negligence or want of care, he incurred no loss or responsibility beyond the loss of his labor in tanning and manufacturing, and the expenses of transportation. All other loss would have fallen upon the plaintiffs. He was not, therefore, a purchaser upon credit; for there is no express or implied promise to pay for the goods. The contract was not to purchase, but " to tan from 2000 to 3000 hides, to be worked the present fall, and to be furnished by Hyde & Everit." Osborn undertook to "take the hides in New York, transport them to his tannery in Tioga county, to tan and manufacture them into sole leather, in a reasonable time and in a good workmanlike manner, and return the same to Hyde & Everit, in New York." There is nothing in this language which indicates a design by the plaintiffs to sell, or by Osborn to purchase, but it indicates a clear intention to suffer the right of property to remain unchanged. These provisions contain the substance of the agreement in regard to furnishing the goods, and performing the work, and the duties and obligation of the parties in

relation thereto.   Let us now examine whether in providing for the adjustment of compensation and profits, the parties have used expressions which manifest an intention to change the title to the property.

The hides were to be furnished by Hyde & Everit, on a commission of 5 per cent on cost and charges for buying, and 6 per cent commissions and guaranty for selling the leather. These provisions, and especially the commercial and ordinary signification of the word commissions, are relied upon as evidence of an intention that the hides were to be purchased, and after they were converted into leather, sold for Osborn.   In commercial parlance the word commissions certainly means the compensation which the merchant or factor takes for buying or selling goods for another.   In ascertaining the intention of the parties, and determining the effect of the written instrument however, every part of it is to be considered, and if possible, to have effect, and not detached and isolated sentences.   The plaintiffs were merchants, dealing in the article which is the subject in controversy.   They either had purchased in the market or must of necessity purchase the property in order to furnish it to Osborn.   They were also to insure it and receive it again and sell it, in its manufactured state.   In adjusting the reward which Osborn was to receive for converting the raw material into leather, it is but slight—if it is any—evidence of an intention to change the title, that the purchase money and interest, money paid for insurance and commissions for buying and selling, should first be taken from the proceeds of the sales, and the residue paid over to Osborn, as his compensation.   So the provision guarantying the sales is simply a manifestation of the same general purpose, and is designed to assure to the manufacturer his reward, should the property be eventually sold to an irresponsible purchaser.   The hides were to be insured and charged to Osborn, and this also is thought to manifest an intent to sell.   I do not see this provision in that light. Even the literal sense of the expression does not favor the defendants' interpretation, for it is the hides that are to be charged, and not the price at which they were sold to Osborn,

Hyde *v.* Cookson.

or purchased for him. They were to be charged to him as evidence of their delivery for the purposes of the contract, and to insure their return, which is consistent with the idea that he received them as bailee and manufacturer, and not as purchaser and owner. The concluding sentence of the agreement is also significant to show the nature of Osborn's interest. "When the leather is sold, the account is to be made up, and the net proceeds, after deducting the cost of hides, and expenses, commissions on hides and leather, interest, insurance and all other expenses, shall be the profit and loss to accrue to Mr. Osborn in full for tanning as above." Thus the clear residuum was to be Osborn's reward—not for the mercantile risk he had incurred by the investment of his money or his credit in the purchase of Orinoco and Augustura hides, but as a compensation for the labor and expense of converting them into hemlock sole leather. In the absence of words which express, or from which it may be implied, that the parties intended the right of property should pass to Osborn, the rule which determines the right will be found in the dissenting opinion of Ch. J. Bronson, delivered in *Mallory* v. *Willis*, (4 *Comst.* 76,) and recognized and approved in *Foster* v. *Pettibone*, (3 *Selden*, 433,) which is in these words: "When the identical thing delivered, although in an altered form, is to be restored, the contract is one of bailment, and the title to the property is not changed. But when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, he becomes a debtor to make the return, and the title to the property is changed. It is a sale." We have seen that the contract provided for the return of the identical hides delivered, in the form of sole leather, and therefore I think the plaintiffs were entitled to recover.

It appears that the labor and expenditure of Osborn upon the hides added $2000 to their value, after they came to his hands; which sum, with $64.37 interest thereon, in addition to the value of the hides in their unmanufactured state, the plaintiffs were suffered to recover, under the charge of the court. In applying the rule of damages, it must be remembered that

the defendants are not trespassers or wrongdoers. . Although the action is in form *ex delicto*, it arises out of a contract, and involves the right to property which came lawfully into the possession of the defendants, and of Osborn, their assignor. Whatever has been done to change the property from its natural condition and to add to its value, has been done in good faith, with the approbation of the owners, and in execution of Osborn's contract with them. This has been broken, and it is in consequence of that breach that the plaintiffs are entitled to recover. When they have judgment for the full value of their interest in the subject of the contract, is not that a full satisfaction, without depriving the defendants of the entire value of the labor and expenditures put upon it in good faith? It is true that in a different form of action the plaintiffs might have taken judgment for the specific property in dispute; but it is also true that, even in that case, had the contract been fully performed by Osborn, they would have been bound to account to him for the proceeds of the property in the manner specified in the contract. Having chosen a mode of proceeding where the recovery is to assume the form of damages, should not the measure be limited to the value of their interest in the property? Had they elected to prosecute Osborn for a breach of the contract, the measure of their damages would have been the extent to which they were injured, and not the entire value of the property when manufactured into leather. 'In acquiring title to property by accession, the law makes a distinction between a willful and an involuntary wrongdoer. The former never can acquire the title, however great the change wrought in the original article may be, while the latter may.' This is the precise question decided in the celebrated case of *Silsbury* v. *McCoon*, (3 *Comst.* 378;) the judge at the circuit having rejected the evidence offered, that the taking of Wood's corn (from which the whisky in dispute was made) by the plaintiffs, was not only wrongful, but willful. Judge Ruggles, who delivered the opinion, after saying that if during the continuance of the possession of the wrongdoer, he enhances the value of the chattel willfully taken, by the labor and skill bestowed

Hyde *v.* Cookson.

upon it, the true owner may retake it, or recover its improved value in an action for damages, proceeds to say that the common and the civil law "agree in another respect, to wit, that if the chattel wrongfully taken afterwards comes into the hands of an innocent holder who, believing himself to be the true owner, converts the chattel into a thing of different species, so that its identity is destroyed, the original·owner cannot reclaim it." This distinction between a willful and an involuntary wrongdoer, runs through the authorities, and stands upon the principle that a party can obtain no right by his own wrong. (*Brown* v. *Sax*, 7 *Cowen*, 95. *Baker* v. *Wheeler*, 8 *Wend.* 505. *Rightmyer* v. *Raymond*, 12 *id.* 51. *Martin* v. *Porter* 5 *Mees. & Welsb.* 352. *Wild* v. *Hold*, 9 *id.* 672.) In *Pierce* v. *Schenck*, (3 *Hill*, 28,) Mr. Justice Cowen expresses the opinion "that when a manufacturer receives goods for the purpose of being wrought in the course of his trade, the contract is entire, and without a stipulation to the contrary he has no right to demand payment until the work is complete. *A fortiori* he has no right to carve out payment for himself without consulting the bailor. A miller is entitled to take toll from your grist, on grinding, but if he chooses to grind only a part and then sell the whole, he is not entitled to toll for what he actually grinds. It is like the common case of undertaking to labor during a certain time, or on finishing a certain amount of work for so much. Till the labor is performed he can claim nothing." These observations are not entitled to the force of authority, because the other judges who heard the argument refused to express any opinion upon the measure of damages beyond the value of the original article. They may all, however, be taken to be true—which they undoubtedly are, when made in their appropriate place—without aiding the plaintiff upon this appeal. This is not an action where the manufacturer is asserting his right to recover compensation for the work done, or to retain a part of the property as a compensation for his labor, having failed to complete the contract. But the plaintiffs bring their action for the conversion; and the question is whether they shall recover more than the value of their interest in the prop-

erty when the residue of the interest, if any, really belongs to the defendants, being the proceeds of their labor and expenditures. It is a very important feature in the transaction, that the enhanced value not only proceeded from the labor and expenditures of Osborn, applied to the property in good faith and in pursuance of the contract with the plaintiffs, but so applied before the conversion upon which the right of action is founded took place. In no sense of the term can he be regarded as a wrongdoer, in so much as the enhanced value is concerned, but his only breach of duty is his inability to complete his engagement, or his mistake in supposing the property in the hides vested in him. I have seen no case, in an action sounding in damages, in which the manufacturer who had expended his money and labor in good faith, has been deprived of the enhanced value ; and I have not been referred to any principle which will justify such a measure. The most complete justice will be done to both parties by limiting the plaintiffs' damages to the full value of his interest in the property, giving them the same ample indemnity as they would have had in an action for a breach of the contract. The measure should be the money paid by the plaintiff and 5 per cent commissions for buying, expenses, interest and 6 per cent commissions upon the value of the leather when ready for the market. This will put the plaintiffs in the same position as they would have been in if the contract had been performed by Osborn, and the leather returned to them to be sold.

Unless the plaintiffs consent to a reference to estimate the damages, upon the principle stated, and the plaintiffs elect to make the proper deduction from the amount of the judgment, there must be a new trial, with costs to abide the event.

[Kings General Term, October 2, 1855. *Brown, S. B. Strong* and *Rockwell*, Justices.]