# Charles Winchester v. William H. Craig and others.

*Trover: Timber: Good faith: Mistake: Damages: Value: Exemplary damages.* In an action of trover for the conversion of timber by cutting the same by mistake and without willful wrong from the lands of another in Michigan and transporting them to Toledo, Ohio, the value of the timber standing being $1 50 per thousand, and the cost of cutting, hauling, running, booming, rafting and towing to Toledo amounting to upwards of $9, and the value there $12, a ruling fixing the measure of damages at either the value where taken, together with the profits which might have been derived from its value in the ordinary market, or the market value at Toledo, less the sum expended by defendants in bringing it there and putting it in condition for sale, with interest from the

date of the conversion, is sustained:—MARSTON, J., with whom COOLEY, CH. J., concurred, holding that in the absence of fraud, violence, or willful negligence or wrong, the proper measure of damages generally in trover, as in other like actions, is such a sum as will afford compensation for the actual injury sustained, and that the ruling in question was correct as a general principle in cases where exemplary or punitory damages were not admissible;—GRAVES, J., concurring in the result; and CBMPBELL, J., concurring in affirming the judgment upon the ground that the conversion is set forth in the declaration as having occurred in Michigan, and that the only conversion shown to have taken place in Michigan was the original taking and removal of the logs.

*Submitted on briefs October 29.    Decided January 11.*

Error to Wayne Circuit.

*D. C. Holbrook*, for plaintiff in error, relied upon: *Symes v. Oliver, 13 Mich., 9; Final v. Backus, 18 Mich., 218; Grant v. Smith, 26 Mich., 201;* and *Greeley v. Stilson, 27 Mich., 255.*

*Ashley Pond* and *G. V. N. Lothrop*, for defendants in error, cited: *Baldwin v. Porter, 12 Conn., 484; Wilde v. Hexter, 50 Barb., 450; Northrup v. McGill, 27 Mich., 238; Dresser Man. Co. v. Waterstone, 3 Metc., 9; Riddle v. Drwin, 12 Ala., 591; Moody v. Whitney, 38 Me., 174; Hill v. Canfield, 56 Penn. St., 454; Greening v. Wilkinson, 1 C. & P., 625; Wood v. Moorewood, 3 A. & E., N. S., 440; Read v. Fairbanks, 13 C. B., 729; Rose v. Lewis, 10 Mich., 483; Delegal v. Naylor, 7 Bing., 460; O'Donohue v. Corley, 22 Mo., 393; Menkens v. Menkens, 23 Mo., 252; Evans v. Kymer, 1 B. & Ad., 528; Ripley v. Davis, 15 Mich., 80; Suydam v. Jenkins, 3 Sandf., 626; Kenedey v. Strong, 14 Johns., 128; Stevens v. Low, 2 Hill, 132; Kenedey v. Whitmore, 4 Pick., 466; Pierce v. Benjamin, 14 Pick., 356; Beecher v. Deniston, 13 Gray, 354; Hurd v. Hubbell, 26 Conn., 389; Cook v. Loomis, 26 Conn., 483; Otter v. Williams, 21 Ill., 118; Sturges v. Keith, 57 Ill., 453; Watt v. Potter, 2 Mass., 76; Sillard v. Whittaker, 3 Bibb, 192; Justice v. Mendell, 14 B. Monr., 12; Hayden v. Bartlett, 35 Me., 203;*

*Polk v. Allen, 19 Mo., 467; Cutter v. Fanning, 2 Iowa, 580; Fitch v. Blount, 7 C. & P., 478; Cook v. Hartte, 8 C. & P., 568; Davis v. Oswell, 7 C. & P., 804; Moon v. Raphael, 2 Bing., N. C., 310; Bodley v. Reynolds, 8 Ad. & El., N. S., 779; Agnew v. Johnson, 22 Penn. St., 471.*

MARSTON, J:

Winchester brought an action of trover to recover damages for the conversion by defendants of a quantity of pine saw-logs. It appeared on the trial that defendants were the owners of the north half of section thirty-three, township twenty-one north, range six east, in this state; that they contracted with one Smith to lumber on said land; that by mistake Smith cut the logs in question upon the south half of said section, caused the same to be hauled a distance of about five miles to the Au Sable river, thence run to the boom at the mouth of said river, there rafted and towed from thence to Toledo in the state of Ohio, where they were sold at twelve dollars per thousand feet.

Evidence was also given tending to show that the timber while standing on the land was worth one dollar and fifty cents per thousand feet; that the cost of cutting it was fifty cents per thousand; hauling the logs to the river, five to six dollars per thousand; and their value in the river eight dollars per thousand; that the cost of running them to the boom was thirty-seven and a half cents per thousand; boom charges, one dollar per thousand; rafting and towing to Toledo, two dollars per thousand; and their value there, twelve to thirteen dollars per thousand.

It also appeared that when these logs were cut, the south half of said section was owned by Ebér B. Ward, and that he afterwards, and before suit was brought, assigned all his claim and right of action for such cutting to the plaintiff.

The plaintiff claimed to recover the price at which the timber was sold in Toledo.

The court charged the jury that if they found no willful wrong on the part of the defendants, they might award as damages the value of the property where it was taken, viz. : one dollar and fifty cents per thousand, together with the profits which might have been derived from its value in the ordinary market, or that they might take the market value at Toledo, deduct precisely the sum defendants expended in bringing it to that market and putting it in condition for sale, and award the difference between these two sums, with interest, in either case, from the time the conversion took place; and refused to charge that the plaintiff could recover as damages the price' for which the logs were sold in Toledo.

The finding of the jury, as appears from the printed record, was as follows: "The defendants cut the timber on the land of Ward by mistake; the quantity cut was one million ninety-three thousand seven hundred and eighty-six feet; the value on the land after it was cut was two dollars per·thousand feet; the value at Toledo, and for which the defendants sold the timber, was twelve dollars per thousand; the expenses of the defendants on the timber in cutting and removing the same to Toledo, nine dollars and thirty-seven cents per thousand;" and they assessed the plaintiff's damages at the sum of three thousand six hundred and thirty-one dollars and forty cents.

It will thus be seen that the only question raised by this record is, where parties by mistake cut timber upon the lands of another, and at their own expense transport it to market and sell it, whether the plaintiff in an action of trover can recover as damages the market value at the time and place where it was sold.

An examination of the authorities bearing upon this question shows that they are not in harmony, and that the courts have not always agreed as to the proper measure of damages in this class of cases. Some courts have held, in cases like the present, that the plaintiff could recover as damages the value of the logs at any place to which they were taken and sold or converted, while others have held

such a measure of damages applicable only in cases where there was fraud, violence or willful negligence or wrong, and that where none of these elements appeared, but on the contrary the defendants had acted in entire good faith, and had by their labor and skill materially enhanced the value of the property converted, the plaintiff could not recover such enhanced value. In this last class of cases the decisions are not uniform as to whether the value of the property when first severed from the realty, as in cases of timber or coal where this question has arisen, or the value in its original condition, with such other damage to the realty as the injury may have caused, would constitute the proper measure.

It is apparent upon examination that there is no fixed, definite measure of damages applicable in all cases of conversion of property; and while the general rule undoubtedly is, in ordinary cases, that the full value of the property at the time and place of its conversion, together with interest thereon, is the correct measure of damages in actions of trover, yet, as was said in *Northrup v. McGill, 27 Mich., 238,* "this rule yields, when the facts require it, to the principle on which the rule itself rests, namely: that the recovery in trover ought to be commensurate, and only commensurate with the injury, whether that injury be greater or less in extent than the full value of the property and interest." Indeed, the language here quoted is but an application to actions of trover of the general rule as repeatedly declared in this state, viz.: that except in those actions where punitory or exemplary damages may be given, and those whose principal object is the establishment of a right, and where nominal damages may be proper, the only just theory of an action for damages, and its primary object, are that the damages recovered shall compensate for the injury sustained.—See *Allison v. Chandler, 11 Mich., 542; Warren v. Cole, 15 Mich., 265; Daily Post Co. v. McArthur, 16 Mich., 447.*

It is somewhat difficult to conceive why, upon principle, this rule should not be applied in its fullest extent to cases

33 MICH.—27.

like the present.     The cases, it is believed, all agree that
punitory or exemplary damages are never given or allowed
in cases where the defendant has acted in entire good faith,
under an honest belief that he had a legal right to do the
act complained of, although, even in such cases, he would
be conclusively held to have contemplated, and the plaintiff
would be permitted to recover, all the damages which legit-
imately followed from his illegal act, whether in fact he
actually contemplated that such damages would follow or
not.     Such damages, however, would, in no just sense of
the term, be held as punitory or exemplary; they would
be but the actual damages which the plaintiff had suffered
from the wrongful act of the defendant.     Such then being
the general rules applicable in cases even of active, aggress-
ive wrongs, what is there in this case to make it an excep-
tion ?

It does not require any argument, and I shall attempt
none, to prove that the pecuniary injury sustained by the
plaintiff, from the trespass complained of, falls far short of
the value of these logs at Toledo; and that to award the
value at the latter place as the measure of damages would
be much more than compensation, and would, although
under a different name, be but awarding exemplary dam-
ages, and that, too, in a case where upon principle the
defendants had been guilty of no act calling for such a pun-
ishment.

It is also clear beyond question that had the plaintiff
commenced any other form of action to recover damages for
the injury which he sustained, he could not in such action
recover the market value of the logs at Toledo.     It is very
evident, therefore, that the right of the plaintiff to recover
the value at Toledo depends entirely upon the particular
form of action adopted in this case; as, in any other, where
the defendants had acted honestly, he could only recover
the amount of the actual injury sustained.

Passing for the present the adjudged cases, I can see no
good reason or principle why the measure of damages in

actions of trover should be different from that in other actions sounding in tort; and to hold that there is such a distinction is to permit the form of the action, rather than the actual injury complained of, to fix the damages. This would be giving the form of action a prominence and controlling influence to which it is in no way entitled, and would be permitting the plaintiff, by the adoption of a particular remedy, to increase the damages at pleasure, and that to an extent which would far more than compensate him for the injury which he sustained, and would also be a positive wrong to the defendants. Such a doctrine, if carried out to its logical conclusion, and applied to many cases which might arise, would be to allow the plaintiff damages so far in excess of the injury which he sustained as to cause us to doubt the wisdom of any rule which would thus sanction a greater wrong in an attempt to redress a lesser.

Let us suppose, by way of illustration, one or two cases which might easily arise: a party acting in entire good faith enters upon the lands of another by mistake, cuts a quantity of oak standing thereon and manufactures it into square timber; this he ships to Quebec, where he sells it at a price which, as compared with the value of the standing timber, renders the latter insignificant. Or, suppose the owner, instead of selling such timber at Quebec, ships the same to some European port, and there sells it at a still greater advance. Or, suppose by mistake he cuts a quantity of long timber, suitable for masts, and forwards it to Tonawanda, or New York, and there sells it. Now, in either of these cases, would it be just to permit the owner of the standing timber, in an action of trover, to recover the value at which it was sold? Would the price for which it sold be the amount of the actual damage which he sustained from the original cutting? The price which it brought in the market was almost wholly made up of the cost and expense of manufacturing and getting it there, no part of which cost or expense was borne by the plaintiff. Why, then, should the plaintiff recover this increased value, no part of

which he contributed to in any way? Certainly not as compensation for the injury sustained by him, because he sustained no such injury. Neither could it be for the purpose of punishing the defendants, because they have committed no act calling for such a punishment. It can only be placed upon the arbitrary ground that in this form of action the plaintiff can recover the full value of his property at any place he may find it, or trace it to.

Then, again, there is no uniformity in such a rule. One man cuts timber, but does not remove it; another cuts and removes it a short distance, adding but little to its original value; while another cuts and removes it a long distance, increasing its value thereby an hundred fold. Separate actions are brought against each, the plaintiff in each case claiming to recover the value at the place to which the timber was taken. Now, it is very evident that although the value of the standing timber in each case was the same, and the actual injury to the plaintiff in each case the same, the verdict would be very different, and the party who had in good faith done the most, and spent the most money, in giving the timber any real value, would be punished the greatest. In fact, by increasing its value he would be but innocently increasing to a corresponding amount what he would have to pay by way of damages. In other words, such a defendant, by his labor and the means which he expended in bringing the property to market, has given it nearly all the value it possesses; and when he is sued and responds in damages to the amount of such increased value, he has then paid just twice the actual market value of the property in its improved condition, less the value of the original timber standing; once in giving it its value, and then paying for it in damages according to the very value which he gave it.

It may be said, however, that all these supposed cases are exceptional and extreme; this may be true, but in testing a supposed rule of law, we have a right to apply it to extreme cases for the purpose of testing its soundness; because by so doing, if we find that when carried out it

would lead to gross injustice, and would not at the same time subserve any useful purpose, but would be in violation of other well settled legal principles, we then have a right to discard it as being unsound, not based upon sound reason or justice, and therefore contrary to the doctrines of the common law.

It might also be said, in answer to some of the cases supposed, that the plaintiff could not count upon a conversion which took place in some other state. This I am inclined to think would be correct; but in this case the plaintiff does claim to recover for a conversion which took place beyond the limits of this state. I have therefore only carried the doctrine contended for a little farther.

We need not, however, go beyond the boundaries of this state to imagine cases almost as glaringly unjust as those already supposed; indeed, the evidence in this case showed that while the value of the standing timber was one dollar and fifty cents per thousand, the value of the logs in Detroit was twelve dollars per thousand; and cases may easily be supposed where the value would be much greater.

There is another class of cases where the doctrine which plaintiff seeks to have applied would work gross injustice: a person honestly and in good faith obtains possession of some young animal; he may have purchased it from some person supposed to have a good title to it, but who in fact did not; or he may have purchased it at a judicial sale where, on account of some technical defect, the title did not pass; or it may be through a case of mistaken identity he has claimed to be the owner, whereas, in truth and fact he was not. He retains possession, feeding and taking care of the animal until in process of time it becomes full grown and immensely more valuable. This time may be longer or shorter, depending very much upon the kind of animal. If a pig, but a short time would be required; if a calf or colt, a longer. The original owner, having at length discovered his property, demands possession, which being refused, he brings trover to recover the value. Now, most assuredly, in any of these

cases, the extent of the injury which the plaintiff sustained would not be the then value of the animal. He has not fed it, taken care of it, or run any of the risks incidental to the raising of stock; all this has been done by another. Why, then, should he recover this increased value? And why should the result of the labor, care and expense of another thus be given to him? True it is, that the amount involved in these cases is not so large, but the principle is the same.

It is sometimes said that the effect of the view which we have taken would be to compel a party to sell and dispose of property which he desired to retain as an investment, at what he might consider an inadequate price, and at a time when he would not have sold it. This may be true, yet it is no more than what happens daily, and that under circumstances much more aggravating. Take the case of a willful trespasser: he cuts the timber of another into cord wood and burns it; or he takes his grain and feeds it; or cattle, which the owner prizes very highly, and butchers them. In all these cases the owner has lost his property, and the law cannot restore it; the law cannot do complete justice; it cannot fully and completely protect and guard the rights and feelings of others; it can but approximate to it; and because the owner in this way may be compelled to part with his property, and thus a wrong be done him, it would not improve matters to inflict a much greater wrong upon another equally entitled to protection, in order that the first sufferer might be unduly recompensed thereby. The law rather aims, so far as possible, to protect the plaintiff, but at the same time it has a due regard to the rights of the defendants, and it will not inflict an undue or unjust punishment upon them, in cases where they are not deserving it, as a means of righting an injury, especially where it would much more than compensate the owner for the injury which he sustained.

In this case each has an interest in the logs; the plaintiff as assignee of the original owner; the defendant by,

in good faith, largely increasing their value. Each should be protected in his rights, and thus as nearly as possible substantial justice be done. To allow plaintiff to recover what he here seeks would be to break down all distinction between the willful and involuntary trespasser; a distinction which is based upon sound legal principles, and which is applied in all other forms of action.

What we have here said must not be considered as having any application in cases where the trespass or wrong complained of was willful or negligent. We are not yet prepared to say that the willful trespasser can derive any advantage whatever from his own wrong. On the contrary, there is sound reason for holding that the owner in such cases may reclaim his property wherever and in whatever shape he may find it.

The court under one branch of the charge instructed the jury to allow the market value at Detroit, or Toledo, less the sum of money which defendants expended in bringing it to market. This, we think, was as favorable as the plaintiff had any right in this case to expect. This was allowing the plaintiff more than the value of the timber when it was first severed from the realty. It did not permit the defendants to recover any profit upon what they had done, but protected them to the extent of the advances they had made; and this, we think, was correct.

There might, however, be cases where this rule would not apply, where the market value did not cover the cost of cutting and taking it to market, and cases where it was not sold. In such cases the plaintiff would be entitled to recover the value when the property was first severed from the realty *(Greeley v. Stilson, 27 Mich., 154)*, and was thus in a shape where it could be converted, together with any profits which might be derived from its value in the ordinary market, with interest thereon. If any special damage is claimed beyond this, either to the inheritance or otherwise, it must be sought in some other and more appropriate form of action.

We think these rules, when applied by careful and intelligent jurors, will sufficiently protect all parties, and will afford no encouragement to trespassers.

We have thus far attempted to dispose of this case upon well settled principles, and without any reference to the decisions bearing upon the subject. It may not be considered inappropriate, however, to consider and briefly review some of the cases in point, with a reference to others, as the views we have above expressed we think are abundantly sustained.

In *Forsyth v. Wells, 41 Pa. St., 291,* the parties were owners of adjoining tracts of coal lands, and the defendant had opened a mine upon his own land, near the line, and worked it for years. The dividing line was not exactly known, and the plaintiff claimed that the defendant had dug coal over the line and out of her land, which was denied. The plaintiff claimed that the measure of damages was the value of the coal when dug in the bank, or what was called "knocked down," while the defendant contended that the measure of damages would be the value of the coal in the ground before he had expended any labor in preparing it for market; in support of which he offered evidence, which was rejected; and the jury was charged that the value of the coal when "knocked down" in the bank was the proper measure of damages. *Lowrie, Ch. J.,* in delivering the opinion of the court, said: "The plaintiff insists that, because the action is allowed for the coal as personal property, that is, after it had been raised or severed from the realty, therefore, by necessary logical sequence, she is entitled to the value of the coal as it lay in the pit, after it had been mined; and so it was decided below. It is apparent that this view would transfer to the plaintiff all the defendant's labor in mining the coal, and thus give her more than compensation for the injury done. Yet we admit the accuracy of this conclusion, if we may properly base our reasoning on the form, rather than on the principle or purpose of the remedy. But this we may not do; and especially we may

not sacrifice the principle to the very form by which we are endeavoring to enforce it. Principles can never be realized without forms, and they are often inevitably embarrassed by unfitting ones; but still the fact that the form is for the sake of principle, and not the principle for the form, requires that the form shall serve, not rule, the principle, and must be adapted to its office.

"Just compensation in a special class of cases is the principle of the action of trover, and a little study will show us that it is no unyielding form, but adapts itself to a great variety of circumstances. In its original purpose, and in strict form, it is an action for the value of personal property lost by one and found by another and converted to his own use. But it is not thus restricted in practice, for it is continually applied to every form of wrongful conversion, and of wrongful taking and conversion, and it affords compensation, not only for the value of the goods, but also for outrage and malice in the taking and detention of them. * * *

"Where the defendant's conduct, measured by the standard of ordinary morality and care, which is the standard of the law, is not chargeable with fraud, violence, or willful negligence or wrong, the value of the property taken and converted is the measure of just compensation. If raw material has, after appropriation and without such wrong, been changed by manufacture into a new species of property, as grain into whiskey, grapes into wine, furs into hats, hides into leather, or trees into lumber, the law either refuses the action of trover for the new article, or limits the recovery to the value of the original article.—*6 Hill, 425; 21 Barb., 92; 23 Conn., 523;* and *38 Me., 174.*

"Where there is no wrongful purpose or wrongful negligence in the defendant, compensation for the real injury done is the purpose of all remedies; and so long as we bear this in mind we shall have but little difficulty in managing the forms of actions so as to secure a fair result. If the defendant in this case was guilty of no intentional wrong,

33 MICH.—28.

he ought not to have been charged with the value of the coal after he had been at the expense of mining it; but only with its value *in place,* and with such other damage to the land as his mining may have caused. Such would manifestly be the measure in trespass for mesne profits."

In *Hill v. Canfield, 56 Pa. St., 454,* trover was brought for the conversion at Pittsburg of three rafts of timber sold by the defendants at Cincinnati, and in which the plaintiffs claimed, and the court below permitted evidence of the price at which the timber sold in Cincinnati as the measure of damages. This was held error. The court say: "If there be cases in which more than compensation may be allowed in trover, and I admit there are, they are in cases of heirlooms, family pictures and the like, taken and converted, and also where there are circumstances of fraud, violence and outrage.

"It has not been an unusual thing in practice to allow damages beyond the actual value of the goods converted, and interest, although the general rule undoubtedly is the value of the goods and interest. This may be exceeded, but not without the element of willful wrong, fraud or outrage."

In *Wood v. Morewood, 3 A. & E., N. S., 440,* where defendant had "won the coals under the closes, *bona fide,* supposing that these were his own," *Parke, B.,* instructed the jury: "If there was fraud or negligence on the part of the defendant, they might give, as damages under the count in trover, the value of the coals at the time they first became chattels, on the principle laid down in *Martin v. Porter, 5 M. & W., 351;* but that if they thought that the defendant was not guilty of fraud or negligence, but acted fairly and honestly, in the full belief that he had a right to do what he did, they might give the fair value of the coals as if the coal field had been purchased from the plaintiff."

In *Reid v. Fairbanks, 4 J. Scott, 729,* which was an action of trover for a ship, which had been greatly improved after the conversion, *Maule, J.,* said: "It may be that the wrong-doer, who acquires no property in the thing he

converts, acquires no lien for what he expends on it, and the owner may bring detinue or trover. But it does not follow that, if the owner brings trover, he is to recover the full value of the thing in its improved state. The proper measure of damages, as it seems to me, is the amount of the pecuniary loss the plaintiffs have sustained by the conversion of their ship."

In *Weymouth v. Chicago & N. W. R. W. Co., 17 Wis., 550,* the plaintiff had cut cordwood and piled it upon land which she was in possession of, but which it seems she did not own, with the intention of selling the wood to the defendant. Before the sale was completed the defendant, by mistake, carried the wood to Janesville and there mingled it with other wood, so that it could not be identified. The plaintiff demanded it at Janesville, and failing to obtain it, brought her action to recover damages for the conversion as at Janesville.

At the time of the conversion at Janesville wood was worth at that place four dollars per cord, and afterwards was worth five; while at Farmington, where the wood was first taken, it was worth one dollar and fifty cents per cord. The court held that the plaintiff could not recover the value at Janesville, and after referring to the New York cases, which seem to hold a contrary doctrine, said: "But where the owner voluntarily waives the right to reclaim the property itself, and sues for the damages, the difficulty of separating the enhanced value from the original value no longer exists. It is then entirely practicable to give the owner the entire value that was taken from him, which certainly seems to be all that natural justice requires, without adding to it such value as the property may have afterwards acquired from the labor of defendant."

In *Moody v. Whitney, 38 Me., 174,* the court charged the jury, "that the measure of damages must be the value of the logs when they first became personal property, after the trees were first cut down," and this was held correct, the court saying it was "difficult to perceive why a more rigid

rule should be applied to a defendant in an action of trover, than to one of trespass.''

A contrary doctrine has been held in New York, but it is very doubtful whether the courts in that state will adhere to it should the question again come up. In *Hyde v. Cookson, 21 Barb., 92,* where an action was brought to recover damages for an alleged conversion by defendants of a quantity of hides, the plaintiffs had furnished the hides to one Osborn to tan and manufacture into leather, and return the same to the plaintiffs. Osborn, after partly tanning the hides, failed, and made an assignment of all his property to the defendants for the benefit of his creditors. The defendants took possession of the hides under the assignment, and claimed to own them, and refused to deliver them to the plaintiffs on demand. It was admitted on the trial that the hides had been increased in value two thousand dollars by Osborn, and the court charged the jury that the plaintiffs could recover this increased value. On error the court said: "In applying the rule of damages, it must be remembered that the defendants are not trespassers or wrong-doers. Although the action is in form *ex delicto,* it arises out of a contract, and involves the right to property which came lawfully into the possession of the defendants, and of Osborn their assignor. Whatever has been done to change the property from its natural condition, and to add to its value, has been done in good faith, with the approbation of the owners, and in execution of Osborn's contract with them. This has been broken, and it is in consequence of that breach that the plaintiffs are entitled to recover. When they have judgment for the full value of their interest in the subject matter of the contract, is not that a full satisfaction, without depriving the defendants of the entire value of the labor and expenditures put upon it in good faith? * * * In acquiring title to property by accession, the law makes a distinction between a willful and involuntary wrong-doer. The former never can acquire the title, however great the change wrought in the original article may be, while the latter may.

\*   \*   \*   The most complete justice will be done to both parties by limiting the plaintiffs' damages to the full value of their interest in the property, giving them the same ample indemnity as they would have had in an action for a breach of the contract.''

In *Mathews v. Coe, 49 New York, 57,* the rule which had prevailed in that state, allowing the highest market value up to the time of the trial, was questioned, and a desire expressed by *Ch. J. Church* to consider the question upon principle, and in speaking of the effect of the old rule, the *Ch. J.* said, the difference ''is transferred from the defendants to the plaintiff, not because the latter has sustained any such loss by any act of the former, but in obedience to a supposed arbitrary rule established in such cases.''

The same question again came up in *Baker v. Drake et al., 53 N. Y., 211,* where *Rapallo, J.,* in discussing this question, says, that ''the rule of damages should not depend upon the form of the action. In civil actions the law awards to the party injured a just indemnity for the wrong which has been done him, and no more, whether the action be in contract or tort. Except in those special cases where punitory damages are allowed, the inquiry must always be, what is an adequate indemnity to the party injured, and the answer to that inquiry cannot be affected by the form of action in which he seeks his remedy.'' This case expressly overrules *Markham v. Jaudon, 41 N. Y., 235,* which permitted the highest market price to be recovered.

See also upon this question, the following : *Heard v. James, 49 Miss., 236,* where it was held that the measure of damages for the wrongful taking or detention of property, is to be determined by the animus of the conversion. If the act was in good faith, upon some supposed right of claim or error, the measure will be the value at the time it was taken ; but if the taking or conversion be characterized by malice or oppression, damages may be punitive ; and in an action for its recovery, no allowance will be made the defendant for any increased value that may be bestowed by labor or

skill on the property.—*Riddle v. Driver, 12 Ala., 590; Dresser Manf. Co., v. Waterston, 3 Met., 9; Baldwin v. Porter, 12 Conn., 484; Sedgwick on Damages.*

Finally, it is insisted that this question has already been decided in this court in *Symes v. Oliver, 13 Mich., 9; Final v. Backus, 18 Mich., 218,* and *Grant v. Smith, 26 Mich., 201,* in favor of the plaintiff.

In *Symes v. Oliver* no such question seems either to have been raised or discussed by the court, nor was the question of good faith alluded to by counsel or court in *Final v. Backus.*

In *Grant v. Smith* the defendant in the court below relied upon a tax-deed under which he claimed to have acted in good faith, and he offered the deed in evidence for that purpose, which was rejected. This deed having been rejected, there was nothing in the case tending to show that he had acted other than as a willful trespasser, and such being the case, the plaintiff was clearly entitled to recover the value of the logs at the place to which Grant removed them; and in discussing the objection relating to the measure of damages, the court proceeds upon the theory that Grant in cutting the timber was a mere naked trespasser. The question, however, still remains, was the tax-deed admissible in evidence "to show that Grant, in cutting the timber, honestly supposed that he was the owner of the land, and acted in perfect good faith." I think not, and for reasons other than those there given. It is a notorious fact that tax-deeds are almost universally upon examination found to be invalid, on account of defects not appearing upon the face of the deed. The statute declares, in effect, the deeds to be *prima facie* valid, that is, it shifts the burden of proof to the party claiming against the deed to prove it invalid. But notwithstanding this fact, no person of ordinary care and prudence, with a just regard not only to his own rights and interests, but to those of others, would think of acting upon a tax title, made *prima facie* valid by statute, without having first made a careful examination, outside of and

beyond the deed, in the proper places, for the purpose of ascertaining whether in fact it was of any validity. If, however, he chose to shut his eyes to the well known fact that a large proportion of such titles turn out to be worthless, and act upon such a deed, regardless of how it may upon investigation turn out, and regardless of the rights of others, he cannot afterwards be permitted to come into court, admit the invalidity of his deed, and yet claim that because he did have such a deed he acted honestly and in good faith. The failure to make such an investigation would be evidence of gross carelessness, for which the party should be held responsible.

Judgment affirmed, with costs.

COOLEY, CH. J., concurred.

GRAVES, J., concurred in the result.

CAMPBELL, J:

I concur in affirming the judgment, upon the ground that the conversion of the logs is set forth in the declaration as having taken place in Michigan, and the only conversion which took place in this state was the original taking and removal of the logs. Upon that basis there is no error in the judgment.