### JOSLIN *vs* COWEE.

On the 17th of October, 1866, the plaintiff, being the owner of a large quantity of wool, sold the same to A., F. & W. on a credit of four months, upon their notes. A., F. & W. were insolvent, at the time, and the wool was purchased by A., one of the members of the firm, with knowledge of such insolvency, and with a preconceived design not to pay for the wool. On that day ten sacks of the wool were delivered to the purchasers, and on the next day twenty-one sacks more were delivered. On the 19th of October the plaintiff refused to deliver the remainder; and on that day A., F. & W. made an assignment of all their personal estate, including the wool which had been delivered, to T. & R., to secure liabilities of the assignors to them, and to pay laborers and operatives. The wool delivered was immediately put into the mill of the purchasers, and at the time the assignment was made, the ten sacks delivered on the 17th, and more than one half of the twenty-one

Joslin *v.* Cowee.

sacks delivered on the 18th, had passed the first process of manufacture, and were at different stages of manufacturing into under garments. On the same day, after the execution of the assignment, the defendant, claiming under the assignees, took possession of the wool, at the said mill. On the 22d of October the plaintiff demanded the twenty-one sacks of wool, of the assignees, claiming the right to rescind the sale and reclaim the property, on the ground of fraud. And, before the defendant or either of the parties to or for whom the assignment was executed had paid any money or wages, the same demand was served upon the defendant.

*Held*, 1. That the purchase of the wool by A., F. & W. having been fraudulent, the delivery of the property to them gave them no title to it.

2. That the assignment was fraudulent and void as against the plaintiff.

3. That the plaintiff had the right to have the sale rescinded, unless he had, by some act of omission or commission, lost his *status* and was thus deprived of the power of making complaint; the burthen of showing which was upon the defendant.

4. That the assignees, T. & R., were not in law absolute and *bona fide* purchasers, and their title was no better than that of their assignors. That the assignment itself was evidence that they were not absolute purchasers, but merely trustees of the property assigned.

5. That the wool had not, by the acts of the fraudulent purchasers in mixing the same with other wool and commencing the manufacture thereof, lost its identity, and become changed into a new product, before the transfer by the assignees to the defendant, so as to prevent the plaintiff from rescinding the sale and reclaiming the property.

6. That the defendant was not a *bona fide* purchaser, and could claim no protection as such.

It is only innocent purchasers who purchase property converted into a different species that can be protected; and not even an innocent purchaser is so protected, who takes the title from a trespasser or wrongdoer; because the trespasser had none to give.

The owner of the original material may still retake it in its improved state, or he may recover its improved value.

The case of *Nichols* v. *Michaels*, (23 *N. Y.* 264,) although it holds that as to the *vendee*, upon whom a fraud has been committed, the sale is voidable at his option, does not sustain the position that fraud in the sale renders the sale only voidable as to the *vendor*, of whom the property was fraudulently purchased.

THE plaintiff Joslin and one Gay were, on or before the 17th October, 1866, the owners of a quantity of wool, which was in the hands of H. Rankin & Co. of Troy, as their factors, for sale. And on that day one Mayo, as the agent of the firm of Alden, Frink & Weston, bought of

said Rankin & Co. about 10,000 pounds of such wool at 60 cents per pound. The wool was purchased upon a credit of four months, upon the notes of Alden, Frink & Co. Rankin & Co. did not at the time disclose to the purchasers who were the owners of the wool, and the purchasers did not know who were the owners. Alden, of the firm of the purchasers, was the only member who knew of the purchase. At the time of the purchase of the wool by Mayo, the agent, the firm of Alden, Frink & Weston was insolvent, and known to be so by Alden and Frink, two of the firm, but Mayo, the agent who made the purchase, was ignorant of such insolvency, as were also Rankin & Co., the factors of the owners; though during the negotiation for the sale Rankin & Co. heard that the paper of Alden, Frink & Co. had been protested, and so informed Mayo. Alden was the financial manager of his firm. On the 11th, 12th, 13th and 15th days of October, 1866, large amounts of the paper of Alden, Frink & Co.—nearly $40,000—had been protested at the banks of Troy and New York. The contract for the wool was completed on the 17th day of October, 1866, and on that day Alden, Frink & Weston made their notes at four months, payable to their own order, in payment of the wool, and ten sacks of the wool were delivered on that day to Alden, Frink & Co., and on the next day, the 18th, twenty-one sacks more were so delivered. And on that day the notes so given were delivered to Rankin & Co. before they were informed of the insolvency of Alden, Frink & Weston. On Friday, the 19th of October, Rankin & Co. refused to deliver the remainder of the wool, and on that day Alden, Frink & Co. made an assignment of all their personal estate, including the wool in question, which had been delivered, to Thompson, Sons & Co. and Gould Rockwell, to secure liabilities of Alden, Frink & Co. to them, and to pay laborers and operatives, to the amount of $20,000. The wool was purchased by Alden

with knowledge of the insolvency of his firm, and with a preconceived design not to pay for it. At the time of this assignment by Alden, Frink & Co. on the 19th, the ten bales of wool delivered on the 17th, and more than half of the twenty-one bales delivered on the 18th, had passed the first manufacturing process, and were at different onward stages of manufacturing into shirts and draw- ers, in their manufactory; and also on the same day of this assignment, and after its execution, the defendant Cowee took possession of the property in question at the said mill in Cohoes.

On Saturday, the 20th of October, Alden, Frink & Weston made another assignment to other persons, includ- ing the plaintiff and his copartner, Gay, of *the residue or surplus* that might remain of the same property previously assigned. On Monday, the 22d of October, the plaintiffs caused to be served on the first named assignees, a demand of the said thirty-one bales of wool, alleging the circum- stances of fraud by which they were obtained, and basing their claim thereon, and claiming the right to rescind the sale and reclaim the property, on the ground of such fraud. Before bringing this action, Gay, the former co- partner of the plaintiff in the wool in question, transferred his interest in the claim to the plaintiff. And before the defendant Cowee or any one of the parties to or for whom the first assignment was executed, had paid any money or wages, as they were required by the first assignment, the said written demand of the thirty-one bales of wool, by reason of the said alleged fraud, was also served on the defendant Cowee. The notes given on the sale of the wool were produced on the trial, to be canceled, and a release offered of all claim of the surplus under the second assignment of Alden, Frink & Co. The referee found the amount of wool so obtained was of the value, with inter- est to the date of the report, of $5018.44; that the pur- chase of the wool was fraudulent, and that the sale might

be rescinded; that the defendant was not a *bona fide* purchaser of wool, as far as the plaintiff was concerned, and if he was, the plaintiff would still be entitled to recover as against the defendant, for the value of the wool delivered to Alden, Frink & Co.; that the right to rescind the contract had not been waived, by anything that had been done by the plaintiff, or by Rankin & Co., and ordered judgment for the plaintiff. Judgment was entered for the plaintiff, and the defendant appealed, and asked a reversal of the judgment and a new trial, chiefly upon three grounds: 1st. That the wool was irreclaimable, from its consumption and loss of identity. 2d. That the defendant and others were *bona fide* purchasers. 3d. That the original sale was not promptly and effectually rescinded by the vendors, but was ratified.

*John B. Gale,* for the appellant.

*E. F. Bullard,* for the respondent.

*By the Court,* POTTER, J. There are leading features in this case which are in the way of giving effect to the admirable argument and clear logic of the counsel for the defendant. What is called the first assignment of the wool in question by Alden, Frink & Weston, which appears in the case, how valid soever it may be in regard to all the estate therein described, except that obtained of the plaintiff, was, upon the finding of the referee, which is well sustained by the evidence, fraudulent and void as against the plaintiff at his option; the wool having been purchased with a knowledge of the insolvency of Alden, Frink & Co., and with a preconceived design not to pay for it. To give to a transaction so conceived in iniquity, and so consummated in sin, moral and legal soundness, requires either the performance of a legal miracle, or a corresponding obliquity on the part of the party sinned

Joslin *v.* Cowee.

against, by acts of omission or commission, whereby he has lost his *status*, and is thus deprived of the power of making complaint.   The burden of showing that the plaintiff is in this condition, is upon the defendant. Especially is this so, when the referee has found as facts, that neither the plaintiff or his factors, Rankin & Co., have done anything in relation to the subject matter of the action to waive their rights; that the right to rescind was not waived; and that the contract was rescinded by the plaintiff.   That the fraud found was committed upon the plaintiff, is neither denied or attempted to be justified, palliated or excused; but it is claimed by the defendant, that by the technical operation of law. growing out of the acts of the fraudulent purchasers in their mixing this wool with other wool, which altogether was in such a forward state of manufacture that it lost its identity as wool, and became, with such other wool, changed into a new product before the transfer by the assignee of the fraudulent purchaser of the same, to the defendant Cowee.   It is also claimed that the plaintiff's right to recover must depend. upon the simultaneous title of the plaintiff, and the conversion by Cowee, the defendant; that the wool having thus lost its identity as wool when it was conveyed to Cowee, the defendant, he could not have converted it as wool, inasmuch as there could be no conversion of that which had ceased to be; and that therefore the demand of the wool of Cowee did not authorize the bringing of this action for its conversion.   This embraces a brief outline of the skillfully prepared argument of the defendant's counsel.

I have no disposition to struggle with the science of metaphysics, or with logic, nor to deny their legitimate use in argument; but I am at all times prepared to deny that the perpetrator of a willful and deliberate fraud can, either by the cunning or skill with which he accomplishes his unrighteous advantage, or by the sudden or rapid change with which he has been able to transform his ill

gotten gains from one commodity or product to that of another, he can, even through the agency of metaphysics or logic, secure from the courts an indorsement of such fraudulent devices.    And this I am prepared to hold, how skillfully soever the argument may be framed, or how eloquently or plausibly soever it may be presented.    The courts, whenever their aid is invoked, in such cases, will look at the *animus* of the transaction, and declare the transaction a nullity, when conceived and carried out in fraud.    Such transactions are not merely defeasible or voidable, requiring legal action to effect it; they are absolutely void at the option of. the vendor, unless the defrauded party waives his right by unreasonable delay in making his demand; though I do by no means deny that there is a class of cases which, under other circumstances, sustain the theory and the law as contended for by the defendant's counsel.    They do not, however, apply to this class of frauds.

The question of unreasonable delay on the part of the plaintiff is not made a point in the case.    The delivery of this wool to Alden, Frink & Co. gave them no title to it. They obtained ten sacks on the day of the agreement, the 17th, and twenty-one sacks on the 18th, all of which, it seems, was put in the process of manufacture; and on the next day, Friday, the 19th, they assigned it, with other property, to Thompson & Sons and Rockwell to secure their prior indebtedness and liabilities.    These assignees were not in law absolute and *bona fide* purchasers.    Their title was no better than that of Alden, Frink & Co.    They parted with no consideration at the time, and their assumption of wages to hands was not at all equal to the value of other property assigned at the same time, from which they realized more than the assumed liability, and which it must be assumed was legally assigned, and out of which they must pay such wages, if at all.    The assignment itself is

evidence that the assignees were not absolute purchasers, but merely trustees of the estate assigned..

Nor is it denied that there is a large class of cases in which the doctrine is established that a *bona fide* purchaser from a fraudulent vendee acquires a good title; but we need not in this case draw the distinction in regard to such as do, and such as do not, come within that rule. This case does not come within the rule. Cowee, the defendant, not only took the wool in question from the assignees of Alden, Frink & Co. as trustees, and not as absolute purchasers, on the day they got their assignment of the same, but before he paid anything thereon, or became liable for wages, he was served with full notice of the plaintiff's claim, and of the fraud by which the wool was obtained. He was not a *bona fide* purchaser, and can claim no protection as such. It is only innocent purchasers, who purchase property converted into a different species, that can be protected; and not even the innocent purchaser is so protected, who takes the title from a trespasser or wrongdoer; because the trespasser had none to give. The owner of the original material may still retake it in its improved state, or he may recover its improved value. (*Silsbury* v. *McCoon,* 3 *N. Y.* 384.) The case of *Nichols* v. *Michaels,* 23 *N. Y.* 264,) does not sustain the position that fraud in the sale renders the sale only voidable, as to the vendor, *of whom* the property was fraudulently purchased. It does indeed hold that as to the *vendee upon whom* a fraud has been committed, it is voidable at the option of the vendee.

It is claimed by the defendant that the second assignment by Alden, Frink & Co. of the surplus, to the plaintiff and others, after paying the first assignees, was a ratification of the sale of the wool. The referee has nowhere found as a fact, that the plaintiff either ratified such assignment, or even knew the fact that such an assignment had been made in his (plaintiff's) favor. Such

assignment bears date Saturday the 20th of October, and on Monday, the 22d of the same month, the plaintiff, in writing, expressly repudiated and rescinded the contract of sale, and demanded the wool; and for caution, it would seem, on the trial the plaintiff tendered a release of all interest in such second assignment; though it does appear that the plaintiff's factors, Rankin & Co., accepted the second assignment conditionally, that it should not affect the plaintiff's right to bring an action to recover the wool. The right or authority of Rankin & Co. to make a conditional agreement, or any agreement, for the plaintiff, after the fraud, to ratify it conditionally or otherwise, was not discussed upon the argument.

No other point of merit is presented, that requires discussion. I have not been able to find a sufficient cause for reversing the judgment, and think it must be affirmed, with costs.

Judgment affirmed.

