McIlvaine, J.
It is claimed by plaintiff in error, that the overruling of the demurrer to the petition was error. That sufficient facts to constitute a cause of action were not stated.
Under the liberal rules of the code of civil procedure, which require a construction favorable to the pleader, the court is of opinion that the demurrer was not well taken. As against a demurrer, we think a cause of action for damages for the conversion of timber, after the same had been severed from the land, and had become the personal property of the plaintiff, by the defendant to its own use, is sufficiently stated, whatever the rule would have been on a motion to make the petition definite and certain.
*289 As to the ownership) of the chattels alleged to have been converted by the defendant to its own use, the plaintiff relied on the title of his wards to the land before and at the time the timber was severed from the realty.
On the part of defendant, it is claimed that the plaintiff’s wai’ds had no title whatever to the land or the timber.
To maintain the issue on his part, the plaintiff proved title to the land in one Justin Ely, and then offered the last will and testament of said Justin Ely, from which the "following extracts only are material:
(< All the residue and remainder of my estate, real and personal, wherever situate, I give, devise and bequeath to my son Charles and my daughter Lucy, to have, receive and enjoy the use, income and profit thereof in equal shares during their natural lives, respectively; and upon their decease I give, devise and bequeath the same to all my grandchildren then living, to be equally divided among them, and to their heirs forever; provided, however, that if the wife of my son Charles shall survive her husband, then she shall have the use and income of his portion thereof during her life, and the de rise to my grandchildren shall not take effect in respect to such portion until her decease.
<s I hereby constitute and appoint my son Charles and my daughter Lucy executors of this my last will and testament, and it is my direction that they be not required to give bonds for the discharge of the duties of said trust, nor to return an inventory of my estate.
K And I do authorize my said executors, to sell at their discretion any part, of my real estate not herein specifically devised, and to change, at their discretion, any of the securities belonging to my estate.”
The locus in qua was part of the residue so devised. Next was offered a power of attorney from said Charles and Lucy, ■to one Heman Ely, purporting, in ample form, to authorize said attorney to sell and convey any part or all of said lands, and upon such terms as he might deem best. Next a deed from Heman Ely, as such attorney for the lands described in the petition, to one. Bowles; and then mesne conveyances from *290 Bowles to the wards of the plaintiff. Testimony was also offered tending to show that the consideration received by said Heman Ely upon the sale to Bowles was paid to said Charles and Lucy Ely. And also, that actual possession of the premises had passed with and by the several mesne conveyances.
Upon this state of the testimony the court charged the jury,' in effect, that if they found the facts in accordance with the tendency of the proof, then the ownership of the plaintiff was sufficient to' sustain the action although his wards were seized only of an equitable estate in the land.
We think there was no error in the charge to the prejudice of the defendant, and that the finding of the jury under it should not be disturbed. True, the power conferred upon the executors of Justin Ely to sell these lands (beyond the life estates), was to be exercised in the discretion of the executors, and clearly, the exercise of this discretion could not be delegated by them to another. If, however, the executors had exercised the discretion and had contracted to sell the lands, it would have been competent for them to have transferred the title to the purchaser by an attorney in fact. For in such case, the act of the attorney would be ministerial merely, and not at all discretionary. In the case before us, the attorney having assumed to sell and convey, the subsequent receipt of the purchase-money by thé executors was such an adoption and ratification of the contract of sale, as was equivalent to an exercise of the discretionary power of sale by the executors themselves, so that, after possession taken by the pui’chasers, their ownership in the lands was sufficiently established to maintain an action for the conversion of timber. And if the court below was wrong in* holding that plaintiff’s wards were seized of an equitable estate in the lands, and not of the legal estate, the defendant was not prejudiced thereby.
During the progress of the trial testimony was offered tending to show that, during the pendency of the action, the plaintiff’s wards had each arrived at the age of twenty-one years, whereupon the defendant asked leave to amend its answer so as to show such fact, but declined to amend on con *291 dition of the payment of costs. And after the testimony was closed, the defendant moved the court to dismiss the action, or direct the jury to return a verdict for defendant on the following grounds:
“ For cause defendant says that it appears from the testimony that the ward Joseph became of full age some time in 1870, and the ward Edward became of full age some time in the year 1877, for which reasons defendant says plaintiff is not entitled to the money if recovered. That it does not belong to him as guardian. That since 1877 he has not been the guardian of either or for either of said alleged wards.”
"We need not stop now to inquire what action the court should have taken, if the facts here stated had been pleaded by supplemental answer before trial.
It is enough to say, that during the trial, leave to amend was at the discretion of the court, and no issue having been tendered upon this point, it was not error to refuse the motion to dismiss. The rights of the parties as they existed at the commencement of the action should prevail, unless a subsequent change in those rights be shown by supplemental pleadings.
Several other matters, also, are alleged for error, by the plaintiff in error, but we find in the record no cause for reversal of the judgment on its petition.
By the cross-petition in error, the defendant -alleges for error the charge of the court as to the measure of damages.
For the purpose of resolving this question, the case may be stated thus: The plaintiff was the owner of land, upon which trees were standing and growing. By an act of willful trespass, the plaintiff’s trees were cut and felled. After the cutting down of the trees,the trespassers converted the same into cord wood and railroad ties, and sold and delivered the wood and ties to the defendant, who, being ignorant of the trespass, applied the same to its own irse. The value of the standing trees was proved ; also the value of the ties and wood at the time the same were delivered to and received by the defendant. Testimony was offered by the plaintiff to show that the value of the trees after they were felled, was greater than while *292 standing, although less than when converted into ties and wood, which testimony was rejected.
This case was before the supreme court commission, and is reported in 32 Ohio St. 571, wherein it was held “ Timber was cut from the lands of B. by trespassers, who, by their labor, converted it into cord-wood and railroad ties, thus, increasing its value three-fold. It was then sold to an innocent purchaser, who was sued by B. for the value of the wood and ties. Whatever might be the rule of damages” (as against the trespassers) “as against innocent purchasers, B. cannot recover the value of the timber as enhanced by the labor of the wrong-doers after it was severed from the realtyand a judgment for such enhanced value was reversed.
The cause being removed to the court below for a new trial, the court among other things charged the jury as follows:
“The supreme court have given us a different rule of damages from that laid down upon the former trial of the case in this court. Here, upon the former two trials of this court, the judges charged the jury that the plaintiffs would be entitled to recover the value of the wood or ties, as the case might be, as they were when delivered to the railroad company, and the^ actually received them. The supreme court say that that was not .the proper rule.
“Now, whether the supreme court was wrong or not, I don’t propose to question. And counsel don’t claim that I ■ought-to question it.
- “There has been some little discrepancy in the opinion of the different counsel as to what the supreme court did say. But I have put the interpretation upon it that, as I believe, •the supreme court did say, and as I give it to you, and you have not any more right to question whether I am wrong, than I have to question whether the supreme court was wrong. Now, that rule is simply this: That if the plaintiff is entitled to recover, they will be entitled to recover the value of the timber, as it stood in the woods at the time it was cut down by these wrong-doers.”
As -we understand the rule laid down by the commission, the value of • the timber, as enhanced by the labor of cutting *293 down, was tlie true measure of damages. And surely, as the labor of felling the trees was a trespass on the real estate of the plaintiff, who has waived the wrong done to his realty, such 'labor was not an accession to the value of his personal property, which the trees first became after they were cut down and severed from the land. The value, at least, of the property after it became personal, was the measure of the injury complained of by the plaintiff. This charge of the court, as well as the refusal to hear testimony as to the value of the trees after they were severed from the realty, was to the prejudice of the plaintiff.
But the plaintiff below is not content with this view. He claims that the court erred in refusing to give as the measure of damages the value of the ties and wood, at the time and place they were delivered to the defendant; thus bringing into review the decision of the commission, as reported in 32 Ohio St. 571. A decision of the commision, which was a court of last resort in this state, equal in authority and dignity with this court, stands as a precedent for our decisions, and should not be overruled except for most cogent reasons.
The question then before the commission, and now before ns, is one of great importance and no little difficulty. Many cases were reviewed by the commission, as will appear from the report, and after consulting those authorities and some others, it is apparent to us that reported cases are at variance at almost every point in the line of reasoning. It is true, that some principles involved are not disputed, and from these and some others that are indisputable, we think the true solution of the question can be obtained. Ye admit as a -general rule, that no man can be deprived of his property without his consent, except by operation of. law. Hence, where his property has been taken from him, not by operation of law, and without his consent, he may follow and reclaim it, in sjpecie, into whose hands soever it may come, so long as he can establish its identity. And in all cases where the owner seeks to reclaim the possession of his property, being able to establish its identity, the fact that accessions to its value have been made by the labor of those who have wrongfully withheld it, cannot *294 be interposed against tlie right of the owner to the possession of his property. And in all such cases it does not matter whether the person from whom it is reclaimed, or - the person who enhanced its value by his labor, was a willful trespasser or a person who came into possession without intentional wrong. A question often arises, whether property by reason of changes wrought upon it, has lost its identity, but no such question is made in this case, as the plaintiff, if he had so elected his remedy, most clearly could have reclaimed the cord-wood and railroad ties from the original trespasser, or from the defendant who purchased them. But no such remedy was sought by the plaintiff.
Another undoubted doctrine of the law is, that a person whose property is wrongfully taken or withheld from him, may waive his right to the property in specie, and elect to pursue a remedy for damages only; and in such case, the general rule for the measure of damages is the value of the property at the time it was taken, or converted by the wrong-doer. The principle upon which this rule of damages is based is, that j ustice requires that the injured party should be made whole; but justice to him requires nothing more. This rule is sometimes modified for the sake of the principle, as where the value of property is subsequently enhanced by an advance in the market price; but the principle, as a matter of legal right, is never departed from. True, the law permits an award of damages in excess of this rule of compensation, when the wrongful act was wanton or otherwise aggravated. But this is permitted by way of punishing the wrong-doer, and for example’s sake. It is not a matter of legal right in the injured party. Eor every wrong done, if it can be redressed in damages, the rule is that the injured party shall have compensatory damages, and if the wrongful act was willful,’ wanton or malicious, punitive damages may also be awarded. Indeed, it appears to me to be axiomatic, that, as between man and man, where no wrong was intended, equal and exact justice is done when the party wronged is made whole for all that he lost by reason of being deprived of property. Upon this principle it is now established by a clear weight of authority, that a person deprived *295 of Ms property by an uMntentionally wrongful act, who seek3 redress in damages, is not entitled to recover from the wrongdoer an increase of damages by reason of accessions to the value of the property from the labor or skill of such wrong-doer. 3 N. Y. 379; 33 Mich. 205 ; 37 Mich. 332; 84 Penn. St. 333; 21 Barb. 92; 81 Ill. 359; 49 Miss. 236; 39 Wis. 456; 7 Up. Can. Q. B. 338; 15 Grant (Up. Can. Ch.), 304; 18 Grant (U. C. Ch.), 7; 13 Com. B. 729 ; 41 Pa. St. 291; 55 Pa. St. 176; 23 Cal. 306; 26 Maine, 306; 3 Ad. & El. (N. S.) 440
Such being the rule in an action against one who takes the property of another and converts it to his own use without intentional wrong, it certainly follows, that in an action against an innocent purchaser from such an unintentional wrong-doer, the measure of damages would not include the enhanced value of the property by reason of the labor of the first taker.
It seems clear, that such purchaser, having been mulcted in damages at the suit of the owner, could not have recourse against his vendor for greater damages than the owner of the property could have claimed against him.
It only remains, therefore, in this line of reasoning, to inquire as to the measure of damages in an action by the owner against an innocent purchaser of the property enhanced by the labor of a willful trespasser. In such case, it is clear that the defendant is not a proper subject of punishment; and it is equally clear, that the plaintiff’s loss is no greater than it would have been, if the trespasser had been innocent of all intentional wrong; nor is the guilt of the defendant greater. Hence, it seems to a majority of the court, that exact justice would be done, as between these parties, by limiting the plaintiff’s damages to the amount of his actual loss, to wit: the value of the trees when they were first taken as personal property.
It is said, however, that the property was the plaintiff’s at the time the defendant received it in its enhanced condition and converted it. This claim is technically correct. But whereby did he become entitled to the enhanced value of the property ? His merit is that of reaping where he did not sow. The party whose labor enhanced the value is the meritorious *296 owner of the increase. True, being a -willful wrong-doer, his interest in the property was subject to forfeiture at the will of the owner by way of punishment and for example’s sake; but the owner has not demanded the forfeiture from the wrongdoer, the demand is made upon an innocent purchaser. There is no suggestion that the purchaser did not exercise ordinary care in making the purchase. If after the purchase the plaintiff had notified the purchaser of his title, and had demanded the possession of the property, we are not prepared to say that a refusal to deliver would not have shown such a willful conversion of the plaintiff’s property as would have entitled him to recover the enhanced value as the true measure of his loss. But that is not the case before us. The plaintiff did not desire to reclaim the property from the defendant. By bringing his action for damages, he voluntarily abandoned his right to the property; and having brought his action against the innocent purchaser, instead of the willful trespasser, we think his damages should be limited to the value of the property when it was taken from his possession.
The suggestion that the rule of damages here adopted will induce purchasers of property to be careless as to the 'title of their vendors, is of little weight. Actual knowledge or willful ignorance of the owner’s rights on the part of the purchaser, would, no doubt, make him liable for the full value at the time of purchase. And, on the other hand, it might be suggested with, at least, equal force, that another rule might make owners negligent in pursuing remedies, until the property, greatly enhanced in value by the labor of others, would come into the hands of innocent, but more responsible persons, than the willful wrong-doer. We see no good reason for overruling the decision of the supreme court commission.
The defendant in error having waived the error of the court below in limiting the damages to the value of the standing trees, the judgment below is affirmed.
Boynton, C. J.
While I concur in the reversal of the judgment upon the ground stated in the opinion, I dissent from the rule of damages laid down by the court as applicable to a case *297 of this character. Upon a thorough search of the decided cases bearing on the subject, I have been unable to' find one that supports the conclusion reached by a majority of the court, except the case between the same parties, and relating to the same conversion, decided by the commission and reported in 32 Ohio St. 571. An examination of the authorities reviewed in that case, and others, has led me to the conclusion that that case was incorrectly decided. The facts conceded are, that willful trespassers felled standing timber or trees growing on land of the defendant’s wards, cut the same into railroad ties and wood, and sold the same to the railroad company, by which the wood was consumed, and the ties placed in the bed of its road before the defendant had knowledge of the facts. That the original trespassers could have obtained no abatement from the value of the wood and ties by reason of the labor bestowed in their production had an action for their conversion been brought against them, is the settled doctrine of all the authorities. So long as the property can be identified the original owner may recover it, in specie, by an action of replevin, or recover its value in its improved state, in an action for its conversion. In Snyder v. Vaux, 2 Rawle, 423, trees were cut and converted into rails and posts ; in Smith v. Gonder, 22 Ga. 353, into railroad ties; in Heard v. James, 49 Miss. 236, into staves; in Halleck v. Mixer, 16 Cal. 574; Moody v. Whitney, 34 Me. 563; and Brewer v. Fleming, 51 Penn. St. 102, into firewood; in Betts v. Lee, 5 Johns. 348; and 9 Johns. 362, into shingles; in Brown v. Sax, 7 Cow. 95, saw-logs into boards; in Eastman v. Harris, 4 La. An. 193, a raft of logs into firewood ; in Riddle v. Driver, 12 Ala. 590, and in Curtis v. Groat, 6 Johns. 169, wood into coal; in Hyde v. Cook, 26 Barb. 592, hides were manufactured into leather; and in Silsbury v. McCoon, 3 N. Y. 379, corn into whisky. There are numerous other cases of similar character, and in all of them it is held, that the title of the original owner is not affected by reason of the fact that the value of the property has been enr hanced by the skill or labor of the wrong-doer, voluntarily bestowed upon it. The same principle is applied to the case of one who voluntarily erects a building on the land of another *298 without his consent. In such case the building becomes a part of the freehold, with no right in the person erecting it to remove it, or to compensation for his labor or materials. 1 Hilliard on Real Prop. 5; Bonney v. Foss, 62 Me. 248 ; Linahan v. Barr, 41 Conn. 471; Mathers v. Dobshwetz, 76 Ill. 438. It is also held, where a party having charge of the property of another, so confounds and confuses it with his own, that the distinction cannot be traced, and the other’s property identified, that the party so mixing and confusing the property, loses his own. The Idaho, 93 U. S. 575; Hart v. Ten Eyck, 2 Johns. Ch. 62, 108 ; 2 Kent Comm. 364 ; Jewett v. Dringer, 30 N. J. Eq. 291 ; Story on Agency, §§ 205, 333, and cases there cited. The principle underlying all these cases, is, that no man shall be deprived of his property without his consent, except upon due process of law. The particular ground upon which the judgment of the court proceeds in the present case is, that because the railroad company was an innocent purchaser of the wood and ties from the original trespasser, a different rule is to- be applied in measuring the damages the owner of the wood is to receive, from that that would prevail had the action been brought against the trespassers themselves. To this position I do not assent. The plain logic of the proposition is that the purchaser acquired by his purchase something which his vendors did not own, and consequently had not the ability to impart. It is admitted that at the moment before the sale the whole property in the wood and ties was in the original owner, but the instant the sale was consummated, it is said, that some part of that property, without his consent, and in a transaction to which he was not a party, has passed to the purchaser; and passed from one who, admittedly, had no title to or lien upon any pari of it. And yet it is agreed that the original owner, by reason of his continued ownership may, in an action of replevin, take the property from the purchaser without accounting to him for any part of its value.
The purchaser’s rights are thus not only made to depend on the form of action, but if the action be brought for conversion of the property, instead of giving damages against the purchaser *299 for Ms conversion, to be measured by tbe value of the property when he converted it, which, of course, was long after the timber was cut into wood and ties, he is made liable as of the date that the trees were cut from the soil, a point of time long anterior to the date of purchase. How this rule would work, or how the liability of the purchaser would be affected, if the wood and. ties when purchased were of less value than the timber when severed from the soil, we are not advised. But if anything is settled by the decided cases, it is, that where one wrongfully in possession of the property of another, refuses to deliver it to the owner on demand, he is liable in conversion to the full value of the property at the time of the refusal. Not that demand and refusal are necessary prerequisites to the action, but when they appear, they as a general rule settle the fact and time of conversion. Gilman v. Newton, 9 Allen, 171. The conversion, however, is just as complete, and the time at which the liability therefor is incurred, is as definitely fixed and ascertained, when the property is consumed or destroyed, or has been converted into realty, as in the case of demand and refusal. The unauthorized act of another in assuming dominion and control over the property by which the rightful owner is deprived thereof, is conversion. Pease v. Smith, 61 N. Y. 477. Hence, when the wood and ties in the present case were used by the company, they were as liable for their conversion as if demand and refusal had been made while it was in the company’s power to deliver the same to the owner, and liable for the amount recoverable had demand and refusal been made upon the day the company purchased the property from the original takers. And if demand and refusal had then been made, and the company had refused to deliver the property to the owner, I know of no rule of law, that would relieve it from liability to damages for the full value of the property.at the time of refusal. If such is not the rule, what results 2 When the purchaser is required to pay the real owner for the property, he may recover back the price paid to the wrong-doer, as upon a failure of. consideration. This principle is well settled. Eichholtz v. Banister, 17 C. B. (N. S.) 708; Chapman v. Speller, 14 Q. B. 621; Benj. on Sales, § 423. The company *300 would therefore get the wood aud ties by paying the original owner the value of the timber when felled to the ground. Either this results or the absurdity follows, that while the original trespasser had neither title to, nor lien upon, the wood or ties, he 'is enabled, in an action for the price paid by the purchaser, to recoup the amount which his labor added to the value of the property. He would thus gain and accomplish by the sale, what otherwise, he could not have obtained.
The principle that the purchaser in such case, however innocent, sustains no better relation to the property than did the party from whom he purchased it, is well supported by authority.
In Silsbury v. McCoon, supra, it was said by Ruggles, J., that “ the thief who steals a chattel, or the trespasser who takes it by force, acquires no title by such wrongful taking. The subsequent possession by the thief or trespasser is a continuing trespass; and if during the continuance the wrong-doer enhances the value of the chattel by labor and skill bestowed upon it, as by sawing logs into boards, splitting timber into rails, making leather into shoes, or iron into bars, or into a tool, the manufactured article still belongs to the owner of the original material, and he may retake it, or recover its improved value in an action for damages. And if the wrong-doer sells the chattel to an honest purchaser having no notice of the fraud by which it was acquired, the purchaser obtains no title from the trespasser, because the trespasser had none to give. The owner of the original may still retake it in its improved state, or he may recover its improved value. The right to the improved value in damages is a consequence of the continued ownership. It would be absurd to say that the original owner may take the thing by an action of replevin in its improved state, and yet that he may not, if put to his action of trespass or trover, recover* its improved value in damages.” ' This doctrine was adherred to in Joslin v. Cowell, 60 Barb. 48, where it was said: “It is only innocent purchasers who purchase property concerted into another species, that can be protected, and not even the innocent purchaser is so protected who takes the title from a trespasser or wrong-doer, because he had none to give.”
*301 The case of Tuttle v. White, recently decided by the supreme court of Michigan, and reported in volume. 9 of the Northwestern Reporter, p. 528, is quite in point.
The action was in trover for the conversion of certain saw logs. The defendant purchased the logs in good faith, from parties who wrongfully cut them upon the land of the plaintiff. The court, in disposing of the ease, said: “ A person in purchasing personal property runs his risk as to the title he is acquiring, and if he is unfortunate enough to purchase from a trespasser, or one who has no title and can give none, he must suffer the loss or look to his vendor.” The plaintiff was held entitled to the value óf the logs at the time the defendant purchased and assumed control over them. To same effect is Nesbit v. St. Paul Lumber Co., 21 Minn. 491.
These eases are in accord with the large and uniform current of authority which holds that in purchasing personal property, the purchaser must abide by the title of his vendor, and can acquire no better right than he possessed.
White, J., concurred in the dissenting opinion.
This case was decided before Longworth, J., came • on the bench.